## 61714. THE STATE v. IZQUIERDO et al.

POPE, Judge.

The defendants were involved in a one-vehicle automobile accident on I-75 in Lowndes County on September 8, 1980. When Sergeant West of the Georgia State Patrol arrived on the scene to investigate, he found Blanca Izquierdo on the highway with a broken leg and the other defendant, Denny Gagnon, sitting on the railing of the bridge. Beside Gagnon was some luggage and a styrofoam cooler. Sgt. West summoned an ambulance for the two women and a wrecker to remove the car which was on its top in the roadway. When the car was uprighted, Sgt. West, who was gathering items scattered by the accident, noticed a package in the car which he felt might contain a perishable item. In order to determine whether the contents of the package needed to be refrigerated, Sgt. West testified that he opened one end of the wrapping over the package. Beneath the wrapping he found a plastic bag containing what was determined to be a substantial quantity of cocaine. Prior to this discovery the defendants, along with the luggage and cooler, were transported to the hospital.

Officers were dispatched to the hospital when the package at the scene was discovered to be cocaine. The defendants were arrested and subjected to a warrantless search of their luggage which revealed additional quantities of cocaine. Defendants were jointly indicted on two counts of violating the Georgia Controlled Substances Act: possession of cocaine and trafficking in cocaine. The trial court granted defendants' motion to suppress the seized cocaine and the State appeals pursuant to Code Ann. § 6-1001a (d). The searches and seizures on the accident scene and at the hospital are considered

separately below.

1. The State alleges that Sgt. West inadvertently discovered the contraband while conducting a noninvestigative police inventory of the automobile. Sgt. West testified that it was the policy of his agency to conduct such an inventory as a follow-up to any accident investigation for the protection of the owner and to protect the police from groundless claims of missing property. In South Dakota v. Opperman, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976), the United States Supreme Court approved an inventory of an automobile in lawful police custody for the limited purpose of securing the car and its contents. The inventory should be done incident to the caretaking function of the police and must not be done with an investigative intent. Id. at 374-375.

Defendants set forth several arguments in support of their contentions that the inventory and seizure should be held improper. First, defendants argue that the car was not in lawful police custody as required by Opperman, supra. Their contention is that the vehicle had not been impounded at the time Sgt. West conducted his inventory and discovered the cocaine. In support of this, defendants show that the car was towed by a private wrecker and would have been taken to a private storage yard had no contraband surfaced. Cited as controlling is *State v. Travitz,* 140 Ga. App. 351 (231 SE2d 127) (1976), which involved an inventory following an accident; the inventory was declared improper because the automobile had not been impounded. However, *Travitz* is distinguishable from the present case. There, the defendant remained on the scene; the automobile was off the roadway and was towed away by a wrecker service of his choice to a destination of his choice; and being present, the defendant was capable of "making arrangements for the safekeeping of his belongings." Id. at 352. In the instant case, the defendants were transported away from the scene by ambulance and the automobile was upside down in the road, posing a threat to public safety. Sgt. West summoned the wrecker from a rotating list used by the police and the private yard in question was used by the police to store wrecked autos from time to time. See also *State v. McCranie,* 137 Ga. App. 369 (223 SE2d 765) (1976). We find that the sergeant was within his authority in conducting the inventory.

Secondly, defendants contend that the inventory was investigative in purpose and as such, not in line with Opperman, supra. When Sgt. West arrived on the accident scene, he thought it curious that Gagnon was sitting on the bridge with her luggage close by her while Izquierdo was in the middle of the road obviously bodily hurt. He did not testify that he was "highly suspicious" as defendants contend. Rather, he testified that he would have conducted the

inventory with or without suspicions. "If an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found." United States v. Prescott, 599 F2d 103, 106 (5 Cir. 1979); *Mooney v. State,* 243 Ga. 373, 380 (254 SE2d 337) (1979).

Defendants also contend that even if the inventory search was mandated, the contents of the package would be subject to the exclusionary rule. The contention is that the package should be inventoried as a unit. Questions surrounding the search of containers within automobiles have been the subject of several recent opinions of the United States Supreme Court. Most recently, the issue was dealt with in the case of Robbins v. California, — U. S. — (101 SC —, 69 LE2d 744) (1981). In Robbins, the court brightened the lines drawn in United States v. Chadwick, 433 U. S. 1 (97 SC 2476, 53 LE2d 538) (1977), and Arkansas v. Sanders, 442 U. S. 753 (99 SC 2586, 61 LE2d 235) (1979). Robbins held that unless a closed container, including a package, found in an automobile is such that its contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment. Persons have an expectation of privacy with regard to closed containers found in automobiles. The searches conducted in Robbins, Sanders, and Chadwick were investigative in purpose, however, and the officers were looking for contraband either on the basis of a tip from an informant or because contraband had already been discovered in plain view. In the instant case Sgt. West was engaged in the caretaking function of the police. He was busy gathering items scattered by the accident because the victims of that accident were taken from the scene and unable to do so. When he saw the package, he had no reason to believe it contained contraband. Rather, he remembered the cooler and, making the connection, thought there might be a perishable item in the package. These circumstances, together with the description of the package, make reasonable such an assumption.

The first purpose of an inventory search is "the protection of the owner's property while it remains in police custody." Opperman, supra at 369. To require a package to be inventoried as a unit without even a cursory inspection when the contents of that package may possess unique qualities requiring special storage conditions would defeat this purpose. There is an important public purpose served by the caretaking inventory search conducted by police following an accident and, while persons have privacy expectations in closed containers found in automobiles during the course of investigative searches under the decision in Robbins, supra, we do not read the holding in that case as extending to defeat the purpose of the noninvestigative inventory search. In situations such as this, the

purpose would be better served if the officer is authorized to examine the contents of the package, if only to the extent necessary to determine whether special care is needed.

Sgt. West came upon this contraband "inadvertently and unmotivated by any desire to locate incriminating evidence by unlawful search and seizure." The appellate courts of this state have held such situations to be devoid of any implications of an unconstitutional search and seizure. *Lowe v. State,* 230 Ga. 134 (2) (195 SE2d 919) (1973); *Berger v. State,* 150 Ga. App. 166 (257 SE2d 8) (1979). For the reasons set out above, the discovery of cocaine at the accident scene did not violate defendants' Fourth Amendment rights and the trial court's ruling suppressing this evidence must be reversed.

2. Testimony at the suppression hearing indicated that the luggage carried to the hospital by the defendant Gagnon was searched with the consent of both defendants. There was much conflict in the testimony, however, as it related to the consent of Izquierdo. She was unable to understand any English. While no clear picture emerges from the testimony of the various officers present, if consent was at all obtained from Izquierdo, it was gained by using Gagnon as translator. *" '(W)here there is a conflict in the evidence* on the motion to suppress, the ruling of the trial court will be upheld where there is evidence to authorize a finding in support of his order.'" *State v. Medders,* 153 Ga. App. 680, 681 (266 SE2d 331) (1980). The testimony regarding the consent of Izquierdo was conflicting and the trial court was authorized to suppress the evidence seized at the hospital with regard to this defendant.

The evidence as it relates to the consent of Gagnon is not in conflict. It is uncontroverted that Gagnon was fully informed that she had a right to refuse the search and after being so informed, intelligently and voluntarily consented to the search of her luggage. *Hall v. State,* 239 Ga. 832 (238 SE2d 912) (1977). "Clearly, if there had been a conflict in the evidence, the trial court's decisions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous." *Medders,* supra at 682. The evidence in the instant case as it relates to the oral consent of Gagnon at the hospital directs this court to the single conclusion that her consent was freely and voluntarily given and the ruling of the trial court as to her was clearly erroneous.

*Judgment affirmed in part; reversed in part. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 13, 1981 — REHEARING DENIED NOVEMBER 24, 1981.

■■■■■■■■■■

*H. Lamar Cole, District Attorney,* for appellant.
*David L. Young, Wilby C. Coleman,* for appellees.