## A97A1124. WAGGONER v. THE STATE.
### (491 SE2d 88)

BLACKBURN, Judge.

Jason Waggoner appeals his convictions of driving under the influence and several related charges arising out of a one-car accident, contending that the court erred in denying his motion to suppress and in allowing testimony regarding the results of his' blood-alcohol test. He also contends there was no probable cause for his arrest. For the reasons set forth below, we affirm.

1. Waggoner contends that the court erred in denying his motion to suppress evidence regarding a vodka bottle found in his car, arguing that the evidence was the result of an illegal search. "When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citation and punctuation omitted.) *Lee v. State*, 222 Ga. App. 389, 390 (2) (474 SE2d 281) (1996).

Officer John Robicheaux was the only witness to testify at the hearing on the motion to suppress. He stated that when he arrived at the scene of the accident, Waggoner's automobile was severely damaged and in the middle of an intersection. The car had hit a utility pole, and there were trees on fire and live power lines on the road. Waggoner, who had visible head injuries, told Robicheaux that he had fallen asleep while driving. Robicheaux had Waggoner wait in his patrol car while he took control of the scene and called the fire department and power company. Waggoner was not under arrest at this time, and the officer informed him that he was free to leave the vehicle. Robicheaux testified that he did not suspect alcohol was involved at this time.

As the car was severely damaged and obstructing the intersection, Robicheaux asked Waggoner if he had a preference as to who came to remove the car, and Waggoner stated that he did not. In accordance with county policy, Robicheaux then arranged for Crane Wrecker, a county-contracted wrecker service, to remove the automobile. Robicheaux then performed an inventory search of the automo-

bile's contents and discovered a nearly empty bottle of vodka on the front floorboard. When he returned to the patrol car to question Waggoner about the bottle, he noticed that Waggoner had vomited on himself in the car. Waggoner told Robicheaux that he had been drinking the vodka that night, that the bottle had been full, and that he had been the only one drinking. Robicheaux testified that there was only about an inch of vodka left in the 750-milliliter bottle after the accident. Robicheaux then arrested Waggoner for driving under the influence of alcohol.

Waggoner contends the inventory search was improper because there was no necessity for the State to seize the vehicle. However, "[i]t is well established that a police seizure and inventory is not dependent for its validity upon the absolute necessity for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that." (Citation, punctuation and emphasis omitted.) *State v. Evans*, 181 Ga. App. 422, 423-424 (2) (352 SE2d 599) (1986). "Inventory searches have two purposes: to protect the vehicle and the property in it, and to safeguard the police or other officers from claims of lost possessions." (Citations and punctuation omitted.) *Pierce v. State*, 194 Ga. App. 481 (391 SE2d 3) (1990). "[T]he decisive evidentiary issue in cases involving inventory searches [is] the existence of 'reasonableness' rather than the existence of 'exigent circumstances.'" *Evans*, supra at 424 (2).

In this case, the automobile was severely damaged and blocking an intersection. When given the opportunity, Waggoner expressed no preference regarding towing companies and allowed Officer Robicheaux to make the towing arrangements. Therefore, it was necessary for the police to exercise at least temporary dominion over the vehicle. Under the circumstances, it was reasonable for Robicheaux to inventory the contents of the automobile to protect against claims of lost or stolen property while the vehicle was in the possession of the police or its contractors.

*Fortson v. State*, 262 Ga. 3 (412 SE2d 833) (1992), does not alter this analysis. In that case, the Supreme Court disagreed with this Court's statement that "an inventory search is appropriate whenever the police department selects the towing vehicle rather than the defendant in order to protect the police against claims of lost or stolen property." *Fortson v. State*, 201 Ga. App. 272, 274 (410 SE2d 774) (1991). However, the reason for the Supreme Court's disagreement was that the defendant in that case made his own private contract with the towing company to remove his automobile. *Fortson*, 262 Ga. at 4 (1). In the present case, Waggoner did not express a preference for a towing company or make his own contractual arrangements with Crane's Wrecker, but left such matters to the police. Therefore,

the Supreme Court's reasoning in *Fortson* is inapplicable.

As the evidence supports the trial court's determination that the inventory search was proper, the court did not err in denying the motion to suppress.

2. Waggoner contends the trial court erred in finding that there was probable cause for his arrest. He argues that the results of his state-administered blood test should have been suppressed as the "fruit of the poisonous tree" arising from an improper search and a lack of probable cause for the subsequent arrest.

"For an officer to have sufficient probable cause to conduct a valid DUI arrest, he must have knowledge or reasonably trustworthy information that: (1) defendant was in actual physical control of a moving vehicle; (2) while under the influence of any drug; (3) to a degree which renders defendant incapable of driving safely." (Punctuation omitted.) *Lee*, supra at 391.

The evidence supports the trial court's determination that there was probable cause for Waggoner's arrest. Waggoner admitted that he was driving the automobile, which left the road and struck a utility pole. He told Officer Robicheaux that he had fallen asleep. He admitted that he had been drinking the vodka that night, that the bottle had been full, and that he had been the only one drinking. Robicheaux testified that there was only about an inch of vodka left in the 750-milliliter bottle after the accident. Although Waggoner was free to leave the patrol car, he did not do so. He remained in the vehicle and vomited therein before being placed under arrest. Robicheaux testified that, although he did not initially notice the smell of alcohol, he did smell alcohol when talking with Waggoner after finding the vodka bottle. Under these circumstances, the trial court did not err in finding that Robicheaux had probable cause for the arrest. See *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996); *Whitener v. State*, 201 Ga. App. 309, 310 (1) (410 SE2d 796) (1991); *State v. Greene*, 178 Ga. App. 875 (344 SE2d 771) (1986).

3. Waggoner contends that the court erred in admitting the results of his blood-alcohol test, because the State failed to satisfy the foundational requirements of OCGA § 40-6-392 (a) (1) (A).

(a) OCGA § 40-6-392 (a) (1) (A) requires, inter alia, that blood-alcohol tests be performed "by an individual possessing a valid permit issued by the Division of Forensic Sciences." Waggoner contends the State failed to satisfy this requirement because it did not introduce the relevant permit into evidence. However, Dr. Robert Brown, the forensic chemist who performed the blood tests, testified without objection that he had been issued such a permit. The statute does not require that the actual permit be offered into evidence, and Waggoner did not raise a best-evidence objection to Brown's testimony.

See *Koulianos v. State*, 192 Ga. App. 90 (2) (383 SE2d 642) (1989) (officer's testimony that he was a licensed intoximeter operator sufficient foundation to show he was certified to perform test). Accordingly, this testimony satisfies the statutory requirement.

(b) OCGA § 40-6-392 (a) (1) (A) also requires that the test "shall have been performed . . . on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order." Waggoner contends that the State failed to satisfy this foundational requirement.

The statute provides that "[t]he Division of Forensic Sciences of the Georgia Bureau of Investigation shall . . . issue certificates certifying that instruments have met those requirements." OCGA § 40-6-392 (a) (1) (A). At trial, the State introduced a certificate stating that the blood test machine was approved for use and that "[a]ll of its electronic and operating components prescribed by its manufacturer are properly attached and in good working order." However, this certificate was dated March 6, 1996, several months after the test of Waggoner's blood, and does not indicate when the machine was inspected. Accordingly, the certificate does not by itself establish that the foundational requirements were satisfied at the time the blood test was performed. Compare *Williams v. State*, 224 Ga. App. 368, 369 (2) (481 SE2d 535) (1997) (certificate issued on August 29, 1995, stating that machine was tested on December 19, 1994 and found to be in good working order, satisfied statute).

However, " '[c]ertificates' are not the exclusive means of laying the foundation to admit alcohol test results," *Bazemore v. State*, 225 Ga. App. 741, 745 (2) (484 SE2d 673) (1997), and "substantial statutory compliance can be established by circumstantial evidence arising from the testimony of a chemist who operated the machine and performed the test." Id. at 744. The State in this case presented the testimony of Dr. Brown, the forensic chemist at the Division of Forensic Sciences who performed the blood test on Waggoner. Brown testified that he was trained to operate the blood test machine, and that he used the machine almost daily. He testified that, when he performed Waggoner's blood test, the machine was working properly and all of its working parts were in order. He further testified that no additions, deletions, or alterations had been made to the machine since it was assembled by the manufacturer's factory service engineer. Brown also testified without objection, in response to a leading question by the prosecutor, that all electronic and operating components prescribed by the manufacturer were properly attached and in good working order at the time of the test. Brown's testimony, particularly when combined with the certificate certifying that all components were properly attached and in good working order as of March 6, 1996, was sufficient to enable the trial judge to find that the foun-

dational requirements of OCGA § 40-6-392 (a) (1) (A) were met.

(c) Waggoner also contends that the State failed to establish that the blood test was "performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation," as required by OCGA § 40-6-392 (a) (1) (A). However, Waggoner failed to raise this objection at trial, and so it is not preserved for appellate review. See *McDaniel v. Dept. of Transp.*, 200 Ga. App. 674, 679 (3) (409 SE2d 552) (1991) ("an objection on the ground of a lack of proper foundation without stating what the proper foundation should be is insufficient and presents nothing for consideration on appeal"); *Hight v. State*, 221 Ga. App. 574, 576 (6) (472 SE2d 113) (1996). Moreover, this contention is without merit, as the record reflects that Dr. Brown testified that the headspace gas chromatography method utilized for the test was approved by the director of the Division of Forensic Sciences.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED JULY 30, 1997 —
RECONSIDERATION DENIED AUGUST 13, 1997 — 

*H. Darrell Greene & Associates, Patrick H. Head*, for appellant.

*Benjamin F. Smith, Jr., Solicitor, Barry E. Morgan, Laura J. Murphree, Assistant Solicitors*, for appellee.