A09A2348. ROWLAND v. THE STATE.
(691 SE2d 254)

DOYLE, Judge.

Tiffany Rowland was convicted of possession of cocaine[1] following a bench trial. She appeals from the trial court's order denying her motion to suppress. We affirm, for reasons that follow.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judg-

---

[1] OCGA § 16-13-30 (a).

ment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.[2]

Sergeant Robert Carson of the Cherokee County Sheriff's Department testified at the suppression hearing that he responded to a single-car accident to assist another officer who was already at the scene. When Carson arrived, he observed a vehicle halfway on the roadway, partially obscured by a tree that was also partially blocking the roadway. According to Carson, the vehicle was heavily damaged and needed to be towed from the scene. The driver of the vehicle, Michael Duffy, had lacerations to his face and head and was examined by fire and EMS personnel at the scene. Rowland, who was the passenger in the vehicle, remained with Duffy.

The first officer at the scene, Deputy Lewis, asked Duffy if he had a preference as to which wrecker service to use, and Duffy responded that he did not; Duffy did not indicate any preference for the destination for the vehicle. Therefore, the police contacted the wrecker service that was next on the county 911 rotation list. Carson ran the license plate and learned that the vehicle did not have insurance.[3] Lewis told Carson that he was "not quite sure who the owner of the vehicle was. He was getting a story that it was an ex-husband or possible current husband. . . ." Carson testified that he then, in accordance with the policy of the Sheriff's Department, decided to enter the car "to find the paperwork as to the registration of the vehicle and for insurance information about the vehicle." Carson looked in the glove compartment, where he found a fully loaded 17-round capacity nine-millimeter magazine. Either Rowland or Duffy stated that there was a gun that had been sold or given to someone else, but that the magazine did not go to that weapon. Carson continued to search the vehicle, looking for a gun because "it's very uncommon to find a loaded magazine and not have a weapon to accompany it," and also looking for registration and proof of insurance. Carson testified that

> with the vehicle being totaled and needing to be removed from the scene and the driver being possibly transported from the scene[,] we needed to make sure that [the] weapon would be secured and needed to be in our property room for

---

[2] (Punctuation omitted.) *Waggoner v. State*, 228 Ga. App. 148, 148 (1) (491 SE2d 88) (1997).

[3] The license plate did match the vehicle.

the driver or passenger or legal owner. More importantly, the legal owner[,] for them to retain at a later date [—] we wouldn't want to leave it in the vehicle to be taken from the wrecker lot or wherever they tow it to. It would probably bounce out going down the road and be left on the side of the road or any other reason. We just don't like to leave weapons out and about. Plus, for the purpose of the owner of the weapon they wouldn't want their weapon to be just left out or to be lost. It could be a collector's item, an heirloom, and so forth. So we needed to find it for several reasons.

During his continued search, Carson found a Cross brand pen case in the center console. According to Carson, department policy required him to secure any valuable property found at accident scenes "to safeguard [it] for the owner of that property as well as for the deputies and the wrecker driver and the EMTs on the scene...."[4] Because he believed that Cross pens could be valuable, he opened the box to determine whether it contained a pen. Instead, Carson found a glass tube that was darkened in color, which he believed to be consistent with the ingestion of crack cocaine. When Lewis asked Rowland and Duffy about the pipe, Duffy denied any knowledge, and Rowland responded, "That's mine.... It's a crack pipe." Rowland was permitted to accompany Duffy to the hospital in the ambulance. Lewis questioned Rowland further at the hospital, where he then arrested her and charged her with possession of cocaine.

Rowland moved to suppress the cocaine, arguing that the evidence was the result of an illegal search. Following a hearing, the trial court denied the motion, concluding in its written order that

---

[4] Rowland contends that the county policy requiring inventory of a vehicle applies only where the "victim" is not present, and therefore, was inapplicable here because she and Duffy were present at the scene when Carson entered the car. This argument is belied by the language of the county policy, which states:

6. **CONTROL OF PROPERTY:** ...
a. **PROTECT PRIVATE PROPERTY** from theft and pilferage. **IF THE VICTIM IS NOT PRESENT:** (1) Private Property will be inventoried and processed in accordance with the procedures outlined in the *Evidence and Property Control SOP*. (2) When a vehicle is towed, the inventory shall take place prior to the removal of the vehicle from the crash scene.
b. **HIGH-VALUE ITEMS**, such as currency and jewelry, should be immediately counted/inventoried in front of witnesses, if available, noting their identity on the inventory report, and properly secured pending release to the Property and Evidence Custodian.

Thus, pretermitting whether Carson's compliance with county policy was necessary in order to validate his entry and subsequent inventory of the vehicle, the language of the policy does not require a victim's absence before an officer conducts an inventory of high-value items.

"the discovery of the contraband was pursuant to police caretaking functions for traffic accidents as outlined in the Sheriff Office's Standard Operating Procedures." After a bench trial, the court found Rowland guilty and sentenced her under the First Offender Act.

Rowland argues on appeal that the trial court erred in denying her motion to suppress because the search of the vehicle was illegal, relying primarily on *State v. Travitz*.[5] In that case, an officer responding to the scene of a single-car accident told the driver that the police usually called a particular wrecker service for accidents in the area, but the driver stated that he wanted another service to tow his car. After the wrecker service arrived and winched up his car — which was not on the roadway — the officer entered the car and made an inventory " 'for the protection of the defendant, whoever drives the wrecker, and himself for any kind of theft out of the vehicle.' "[6] The driver was charged with possession of marijuana, which the officer found in the car during his inventory.[7] The trial court granted the defendant's motion to suppress, and we affirmed, noting that the defendant

> was not under arrest at the time the officer proceeded to conduct the inventory. The car had not been impounded by the police and the record fails to disclose that any impoundment was intended. Indeed, it fails to even suggest any necessity of police custody. Defendant's car was being towed away by a wrecking service of his choice to a destination of his choice and he was present and physically capable of making arrangements for the safekeeping of his belongings.[8]

Here, in contrast, the vehicle was partially blocking the roadway. Duffy, who was bleeding from his head and being examined by emergency personnel, advised the police that he did not prefer any particular wrecker service. Further, a check of the license plate indicated that there was no insurance on the vehicle, which did not belong to either Duffy or Rowland. Neither Duffy nor Rowland expressed a desire that Rowland, who was present during the entire exchange, drive the damaged car off of the roadway.[9] And both Duffy

---

[5] 140 Ga. App. 351 (231 SE2d 127) (1976).

[6] Id. at 351.

[7] See id. at 352.

[8] (Emphasis omitted.) Id.

[9] Even if Rowland had offered to drive the car, however, it would not have been unreasonable for the police to refuse to allow her to do so given that there was no proof of any

and Rowland had left the scene in the ambulance by the time the wrecker service arrived, effectively leaving the car in the custody of the police. *Travitz* is factually distinguishable and does not require reversal.

Instead, we are guided by our decision in *Waggoner v. State*,[10] in which the trial court denied the defendant's motion to suppress evidence found in his car at the scene of a single-car accident. The vehicle, which was severely damaged, was blocking an intersection. As in the instant case, because the driver, who had visible head injuries, had no preference regarding the wrecker service, the police arranged for the car to be towed, making it necessary for the police "to exercise at least temporary dominion over the vehicle."[11] We affirmed, noting that

> it is well established that a police seizure and inventory is not dependent for its validity upon the absolute necessity for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that. Inventory searches have two purposes: to protect the vehicle and the property in it, and to safeguard the police or other officers from claims of lost possessions. The decisive evidentiary issue in cases involving inventory searches is the existence of reasonableness rather than the existence of exigent circumstances.[12]

Thus, here, as in *Waggoner*, "[u]nder the circumstances, it was reasonable for [the police] to inventory the contents of the automobile to protect against claims of lost or stolen property while the vehicle was in the possession of the police or its contractors."[13]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 12, 2010.

*William E. Whitaker*, for appellant.

---

insurance on the car. See *Duvall v. State*, 194 Ga. App. 420, 421 (390 SE2d 647) (1990).

[10] 228 Ga. App. at 148.

[11] Id. at 149 (1).

[12] (Citations and punctuation omitted.) Id. See also *State v. King*, 237 Ga. App. 729, 729-730 (1) (516 SE2d 580) (1999).

[13] Id. See also *State v. Izquierdo*, 160 Ga. App. 33, 34-35 (1) (285 SE2d 769) (1981). Compare *Phillips v. State*, 167 Ga. App. 260, 262 (1) (b) (305 SE2d 918) (1983) (inventory search of defendant's vehicle was unreasonable because the defendant's friend was present and capable of moving the vehicle); *Mulling v. State*, 156 Ga. App. 404, 404-405 (2) (274 SE2d 770) (1980) (inventory search of DUI suspect's vehicle was unreasonable because the defendant had selected the towing service for the vehicle).

*Garry T. Moss, District Attorney, Lara A. Snow, Assistant District Attorney*, for appellee.