S11A0287. BOATRIGHT v. THE STATE.
(713 SE2d 829)

HUNSTEIN, Chief Justice.

Nolan Cecil Boatright was convicted of malice murder, burglary and other crimes arising out of the shotgun killing of Scott Hudgins. He appeals from the denial of his motion for new trial[1] challenging the admission of a co-indictee's videotaped statement to police officers, the effectiveness of his trial counsel and the trial court's charge to the jury. Finding no reversible error, we affirm.

1. The evidence adduced at trial authorized the jury to find that the victim was residing in a home in Dallas where Craig Aiken had lived several years earlier. The victim and Shane Whitlow, who was helping the victim remodel the kitchen, were at the home around midnight on April 17, 2007 when co-indictee Michelle Ray, who is the mother of appellant's child, and Heather Pate entered the home and asked after Craig Aiken. Whitlow told them Aiken was not there and returned to a bedroom where his visiting girlfriend was resting. Whitlow heard someone "bust in" the front door; appellant and co-indictee Timothy Ray (Michelle's cousin) then kicked open the bedroom door, demanding the whereabouts of Aiken. Although the electricity was off at the house and lighting was provided by candles, Whitlow recognized appellant, the Rays and Pate because he had known them for several years and had once dated Michelle Ray. Appellant was armed with a shotgun with a laser sight that he had

---

[1] The crimes occurred April 17-18, 2007. Boatright was indicted July 20, 2007 in Paulding County on charges of malice murder, three counts of felony murder, aggravated assault, aggravated battery, two counts of burglary and two counts of possession of a firearm during the commission of a crime. He was found guilty of all charges on August 15, 2008 and was sentenced to life in prison for malice murder, 20 years consecutive for burglary and five years consecutive for possession of a firearm; the remaining convictions were merged or vacated by operation of law. Boatright's motion for new trial, filed August 28, 2008 and amended December 2, 2009, was denied February 19, 2010. A notice of appeal was filed March 15, 2010. The appeal was docketed for the January 2011 term in this Court and was submitted for decision on the briefs.

purchased en route to the home and that he had loaded before entering the home. He first targeted Whitlow, who testified that he briefly wrestled with appellant over the shotgun but was pushed onto the bed. Appellant then targeted Whitlow's girlfriend but turned away when told she was pregnant. Whitlow testified that he then saw the victim standing in the doorway and heard him ask, "what's going on, Shane?" when appellant turned and shot the victim in the upper right chest. Whitlow testified that there was "no doubt in [his] mind" that the victim "never made any type of movement toward" appellant just before the shooting. It is uncontroverted that appellant and the victim had never previously met. Appellant and all of the others in the home then fled. The entire incident lasted no more than 30-45 seconds. The victim, who was carrying a baseball bat and a piece of chain, stumbled outside, where he died; his body was found by police officers who came to the home after they were informed several hours later about the shooting. Forensic evidence established that the victim was standing no further inside the bedroom than the doorway when he was shot and that he was, at a minimum, 18 inches away from the gun when it was fired.

Both appellant and co-indictee Timothy Ray testified that the victim, while holding something in his hand, came to the bedroom shortly after appellant had pointed the loaded shotgun at Whitlow and the girlfriend; that appellant raised the shotgun and pushed or poked the victim with it, telling the victim to move so they could leave; and that the victim refused to retreat but instead kept walking steadily toward appellant, who backed up until he came to the wall. Ray testified that appellant "had his finger on the trigger and boom" shot the victim as the victim was pushing appellant; appellant testified that he "stumbled backwards and tripped into . . . stuff and the firearm went off."

The credibility of appellant, Ray and the other witnesses was solely within the province of the jury, which was authorized to reject appellant's defense of accident and to accept the State's theory that appellant broke into the victim's home and shot him intentionally. See *Glover v. State*, 285 Ga. 461 (1) (678 SE2d 476) (2009). When viewed in a light most favorable to upholding the jury's verdict, the evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the charged crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred by admitting the prior statements given by co-indictee Timothy Ray to GBI Agent Farmer because the prosecution failed to lay the proper foundation. The transcript reveals, however, that defense counsel made no objection when the State, without confronting Ray with the prior statements

or tendering them into evidence, questioned Ray extensively about inconsistencies between his trial testimony and the prior statements, and that defense counsel explicitly stated he had no objection when, several witnesses later, the State called Agent Farmer to testify, had him authenticate the exhibits containing the prior statements and obtained the trial court's permission to admit the evidence as Ray's prior inconsistent statements before trial was recessed for the day. Appellant's failure to raise a contemporaneous objection[2] constitutes a waiver of this issue. See *Rozier v. State*, 287 Ga. 137 (9) (695 SE2d 15) (2010). Moreover, even had appellant's objection been timely, the transcript reflects that appellant had ample opportunity to cross-examine Ray and did so, including questioning Ray about his earlier statements to the police, and that appellant thereafter declined the opportunity to question Ray further when, in response to appellant's objection to the introduction of Ray's prior statements, the trial court offered to have Ray recalled as a witness. See *Brinson v. State*, 268 Ga. 227 (2) (486 SE2d 830) (1997). Under these circumstances, we conclude that it is highly probable that any error in admitting Ray's prior statements did not contribute to the verdict and was, therefore, harmless. See id.

3. Appellant contends trial counsel was constitutionally ineffective for failing to object to the introduction of Ray's statements,[3] alleging that he was prejudiced by counsel's failure because the statements allegedly included matters such as hearsay, speculation by Ray as to what appellant was thinking, statements of opinions and reference to other offenses appellant may have committed.

> The appellate record contains no transcription of appellant's interview as recorded on the DVDs and appellant failed to make application for the transmission of the DVDs to this Court. See Supreme Court Rule 71 (1). Moreover, in arguing this enumeration in his brief to this Court, appellant deliberately chose not to rely on any material set forth in the DVDs but rather based his contentions solely on [a specific page in the transcript of the prosecutor's closing argument which shows only that an untranscribed portion of Ray's interview was again played for the jury]. Under these circumstances, we decline to exercise our discretion to order the trial court to transmit the DVDs to this Court.

---

[2] Defense counsel raised his objection for the first time on the following day.

[3] The trial transcript reflects that the statement in issue was recorded on DVDs, which were played for the jury.

Compare *Robinson v. State*, 272 Ga. 752, 756, n. 5 (533 SE2d 718) (2000).

(Footnote omitted.) *Crawford v. State*, 288 Ga. 425, 426-427 (2) (a) (704 SE2d 772) (2011). Accordingly, because appellant has failed to carry his burden of establishing by the record that Ray's statements contained matters to which defense counsel should have objected, he can prove neither deficient performance by counsel nor the existence of any reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

4. We find no error in the trial court's refusal to give appellant's two requested jury charges on involuntary manslaughter. Appellant's own testimony ("the gun I was holding made contact with him[ a]nd when it did, I gave a push and told him to get back") revealed that his purpose in pointing the weapon was to place the victim in apprehension of immediate violent injury, so that there was no basis for a charge on involuntary manslaughter. See *Rhodes v. State*, 257 Ga. 368 (6) (359 SE2d 670) (1987).

5. The record does not support appellant's assertion that the prosecutor, in posing leading questions to appellant during cross-examination, "testified" against appellant. Accordingly, appellant cannot show that his attorney performed deficiently by not objecting to the prosecutor's alleged "testimony." See generally *Strickland v. Washington*, supra.

6. (a) We find no merit in appellant's assertions that, as to the two burglary counts of the indictment, the trial court committed reversible error by failing to charge the jury on the defense of mistake of fact. That appellant may have thought Craig Aiken still lived in the home does not constitute the type of mistake of fact that would serve as a defense to his unauthorized entry into the home where the evidence is uncontroverted that appellant was not invited into the home by Aiken or anyone else. See OCGA § 16-3-5 ("[a] person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission").

(b) In the absence of a written request, the trial court did not err by failing to instruct the jury on criminal trespass as a lesser included offense of burglary. See *Herbert v. State*, 298 Ga. App. 826 (1) (681 SE2d 245) (2009).

7. In three related enumerations, appellant challenges the giving

of a charge on transferred intent[4] and asserts trial counsel was ineffective in failing to object both to the transferred intent charge and to the prosecutor's closing argument regarding transferred intent.[5]

> Under the doctrine of transferred intent, "(w)hen an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law prevents the actor from taking advantage of his own wrong and transfers the original intent from the one against whom it was directed to the one who actually suffered from it." [Cit.]

*Happoldt v. State*, 267 Ga. 126, 127 (1) (b) (475 SE2d 627) (1996). Although there was evidence from which the jury could have found that appellant shot the victim under the mistaken belief that the victim was Craig Aiken, there was no evidence that appellant was intending to shoot any other person when he shot the victim so as to bring this case within the typical "innocent bystander" scenario in which the doctrine of transferred intent is applied. See, e.g., *Smith v. State*, 267 Ga. 372, 375 (5) (477 SE2d 827) (1996); *Foster v. State*, 264 Ga. 369 (1) (444 SE2d 296) (1994). Because the charge on transferred intent was not adjusted to the evidence, it was error for the trial court to so instruct the jury,[6] and trial counsel performed deficiently by failing to object to the giving of that charge and the prosecutor's closing argument addressing the inapplicable principles of transferred intent.

"A conviction in a criminal case will not be reversed when it is highly probable that an erroneous jury instruction did not contribute

---

[4] The trial court charged the jury that "[i]f one intentionally commits an unlawful act yet the act harmed a victim other than the one intended, it is not a defense that the defendant did not intend to harm the actual person injured." See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 1.41.20.

[5] The prosecutor argued:
. . . [Appellant]'s not going in [the home] to beat up Craig [Aiken]. He's going in there to shoot Craig. That's his intent. And when he goes in and finds out Craig isn't there, his intent shifts down to Shane [Whitlow]. And then after he's getting in this argument with Shane, in an instant his intent shifts over to [the victim].

You're going to hear a charge on this idea of shifting intent or transferring intent, and there's a reason that that's in the law. If I were to sit in here speaking to you and all of a sudden somebody comes walking through that door, and they try to shoot me because of something I've done to them for whatever reason, and they miss me and shoot one of you, well, could he stand up in court and say, "Well, Your Honor, I didn't intend to hit that other person. I'm just a bad shot. It was an accident." No. Guilty of murder because the intent has been transferred. So initially he went over there to cause harm to Craig. And then when he got inside, that shifted to Shane. And then when [the victim] got between him and the front door, it shifted to [the victim] or transferred to [the victim].

[6] We note that the trial court properly charged the jury on criminal intent and malice.

to the verdict. [Cit.]" *Francis v. State*, 266 Ga. 69, 72 (3) (463 SE2d 859) (1995). Additionally, for appellant to prevail on his claims of constitutionally ineffective assistance of counsel, he must show not only that his trial counsel's performance was deficient but also that such deficiency worked to his prejudice so that a reasonable probability exists that, but for counsel's errors, the outcome of his trial would have been different. *Strickland v. Washington*, supra. See also *Jarvis v. State*, 285 Ga. 787 (2) (683 SE2d 606) (2009). In light of the overwhelming evidence of appellant's guilt, we find it highly probable that the charge, although not properly adjusted to the evidence presented at trial, did not contribute to the verdict. For that same reason we further find that appellant has not carried his burden of showing the requisite prejudice, in that there is no reasonable probability that the outcome of his trial would have been different had trial counsel objected to the prosecutor's argument and the trial court's charge. In the absence of prejudice, there is no ineffective assistance of counsel.

8. In his final two enumerations of error, appellant contends that the trial court erred by failing to instruct the jury on mutual combat and that trial counsel was ineffective for failing to request such a charge. "Mutual combat requires that both parties are at fault and are willing to fight because of a sudden quarrel. [Cit.]" *Jenkins v. State*, 270 Ga. 607, 609 (2) (f) (512 SE2d 269) (1999). At trial, appellant presented the defense of accident and asserted that he lacked any intention to shoot the victim; no evidence reflected that appellant and the victim mutually agreed to fight each other. See *Nelms v. State*, 285 Ga. 718 (4) (b) (681 SE2d 141) (2009) (charge on mutual combat is warranted only when the combatants mutually agree to fight). The trial court did not err by failing to give a mutual combat charge because there was no evidence of a mutual intention to fight in this case. See id. It follows that counsel did not perform deficiently by failing to request a charge unsupported by the evidence. See *Jones v. State*, 287 Ga. 770, 771 (2) (700 SE2d 350) (2010) ("trial counsel cannot be faulted for failing to request a jury charge that was not authorized by the evidence").

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 27, 2011 —
RECONSIDERATION DENIED JULY 21, 2011.

*Allen M. Trapp, Jr.*, for appellant.
*Drew Lane, Jr.*, District Attorney, *Anthony Volkodav, Jr., Paul E. Hemmann, Eric K. Dunaway*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attor-

*ney General, Amy E. Hawkins Morelli, Assistant Attorney General,* for appellee.