## A11A1174. AHMAD v. THE STATE.
(719 SE2d 563)

PHIPPS, Presiding Judge.

A jury found Joseph Mitwalli Ahmad guilty of trafficking in methamphetamine; trafficking in 3, 4-methylenedioxymethamphetamine (also known as ecstasy); possession of ecstasy; possession of methamphetamine; violation of the Georgia Controlled Substances Act for possessing trifluoromethylphenyl, piperazine, and benzylypiperazine; driving with a suspended license; and driving with no

---

insurance. On appeal, Ahmad contends the trial court erred by denying his motion to suppress, failing to give his requested charge on the defense of mistake of fact, and sentencing him separately for trafficking in methamphetamine and trafficking in ecstasy. Finding no error, we affirm.

1. Ahmad contends the trial court erred by denying his motion to suppress because it was not reasonably necessary to impound his vehicle and the resulting inventory search was unlawful. We disagree.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[1]

Ahmad and the state agree that the evidence is uncontroverted and no question regarding the credibility of witnesses is presented; as such, this court will review the trial court's application of the law to the undisputed facts de novo.

The evidence shows that as the arresting officer was talking to the driver (Ahmad's wife) of a car stopped for a tag violation, Ahmad parked his car in a nearby parking lot and approached the officer on foot. The officer (who, prior to the stop, had telephoned the dispatcher and confirmed Ahmad's license was suspended) advised Ahmad that his license was suspended, and asked him why he was driving with a suspended license. Ahmad was unable to produce a driver's license and was placed under arrest. Having obtained information from the Georgia Crime Information Center that neither vehicle had insurance coverage, the officer requested officer assistance to conduct inventory searches of the vehicles for impound. Before searching Ahmad's vehicle, however, the officer asked Ahmad whether he had a preference regarding a wrecker service; Ahmad replied that it did not matter. A search of Ahmad's vehicle revealed a bag of pills, a bottle of pills, and $427 in cash.

Ahmad contends that it was not reasonably necessary to impound his vehicle because it was parked on private property and that the policy of the sheriff's office to impound all uninsured vehicles regardless of the attendant circumstances is unreasonable as a matter of law.

---

[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (citations omitted).

Justification for an inventory search is premised upon the validity of the impoundment of the vehicle.[2] A police officer is authorized to make an inventory of the contents of a vehicle that has been impounded.[3] "The ultimate test for the validity of the police's conduct in impounding a vehicle is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment."[4]

> [A] police seizure and inventory is not dependent for its validity upon the absolute necessity for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that. Inventory searches have two purposes: to protect the vehicle and the property in it, and to safeguard the police or other officers from claims of lost possessions.[5] The decisive evidentiary issue in cases involving inventory searches is the existence of reasonableness rather than the existence of exigent circumstances.[6]

"The argument that an automobile must be an impediment to traffic before it can be lawfully impounded has been rejected."[7]

In *Duvall v. State*,[8] after arresting the defendant for driving without a license and insurance, the officer impounded the vehicle and conducted an inventory search. The search revealed a gun, drug paraphernalia, and cocaine.[9] That defendant argued that, because his vehicle was legally parked, it was unnecessary to remove it and that an alternative to impoundment existed because his companion could have driven the vehicle.[10] We found that it was reasonable for the officer to impound the vehicle because there was potential liability involved in allowing the vehicle to remain unattended in a parking lot of a business.[11] We also found that it was not unreasonable for the

---

[2] *Martin v. State*, 201 Ga. App. 716, 718 (1) (a) (411 SE2d 910) (1991).

[3] *Duvall v. State*, 194 Ga. App. 420, 421 (390 SE2d 647) (1990).

[4] Id. (citation and punctuation omitted).

[5] But see *State v. King*, 237 Ga. App. 729, 729-730 (1) (516 SE2d 580) (1999) (stating that inventory searches have been upheld where they serve three legitimate purposes: (1) protecting the property of a person taken into custody; (2) protecting police from potential dangers; and (3) protecting police against claims for stolen or lost property).

[6] *Waggoner v. State*, 228 Ga. App. 148, 149 (1) (491 SE2d 88) (1997) (citations and punctuation omitted).

[7] *Garner v. State*, 154 Ga. App. 839, 841 (1) (269 SE2d 912) (1980) (citing *Mooney v. State*, 243 Ga. 373, 376 (254 SE2d 337) (1979)).

[8] Supra.

[9] Id.

[10] Id.

[11] Id.

officer to refuse to allow the defendant's companion to drive the vehicle, as there was no proof that the vehicle was insured.[12]

Ahmad's reliance on *State v. Bell*,[13] is misplaced. In that case, a defendant was arrested for violating a municipal ordinance completely unconnected to the operation of his vehicle.[14] In this case, Ahmad's arrest was directly related to the impounded vehicle.

Nobody could have legally driven Ahmad's vehicle from the location of arrest because it was uninsured.[15] When given an opportunity, Ahmad expressed no preference regarding towing companies and allowed the arresting officer to make the towing arrangements.[16] Therefore, it was necessary for the police to exercise at least temporary dominion over the vehicle.[17] Under the circumstances, it was reasonable for the police to impound the vehicle and inventory its contents to protect Ahmad's property and to protect against claims of lost or stolen property while the vehicle was in the possession of the police or its contractors.[18] Thus, the court did not err in denying Ahmad's motion to suppress.[19]

The legislature having recognized that "uninsured vehicles pose a threat to the public safety and health,"[20] we cannot say that where a person is arrested for a crime directly related to the operation of his vehicle, the policy of the sheriff's office to impound the arrestee's uninsured vehicle is unreasonable as a matter of law.

2. Ahmad contends the trial court erred by failing to give his requested jury charge on the defense of mistake of fact. We find no merit in Ahmad's assertions.

With respect to the affirmative defense of mistake of fact, "[a] person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission."[21]

> As a rule, the trial court must charge the jury on an affirmative defense such as mistake of fact if the defense is

---

[12] Id.; see *State v. Howard*, 264 Ga. App. 691, 693 (592 SE2d 88) (2003) (physical precedent only) (where defendant who had struck a deer while driving, pulled over on the side of the road and was arrested for driving without a valid license and with no proof of insurance, officer's decision to impound vehicle was reasonable).

[13] 259 Ga. App. 328 (577 SE2d 39) (2003).

[14] Id. at 330.

[15] See *Duvall*, supra.

[16] See *Waggoner*, supra.

[17] See id.

[18] See id.; *King*, supra; *Duvall*, supra.

[19] Id.

[20] OCGA § 40-6-206 (d).

[21] OCGA § 16-3-5; *Boatright v. State*, 289 Ga. 597, 600 (6) (a) (713 SE2d 829) (2011).

raised by the evidence. The trial court is not, however, required to charge the jury on mistake of fact if the charge is not authorized by the evidence. . . .[22]

That Ahmad, who used drugs, may have believed he was authorized as a confidential informant to possess sample amounts of drugs to seek out potential drug dealers for drug busts in Hall County does not constitute the type of mistake of fact that would serve as a defense to his possessing a trafficking amount of drugs (and for three days). Ahmad testified that the officer with whom he worked as a confidential informant wanted to be contacted within 24 hours of any potential drug deals; and according to Ahmad, prior to this incident, he complied with that rule. The evidence is uncontroverted that Ahmad drove outside of Hall County for the purpose of picking up a large quantity of ecstasy and in fact picked up a trafficking quantity of drugs. At the time, Ahmad had not, for more than a month, been in contact with the officer with whom he worked as a confidential informant or with any other officer who authorized him to possess a trafficking amount of drugs. Also, according to Ahmad, at the time of this incident, his services as a confidential informant were no longer being requested and the charges against him had been "taken care of." Thus, there existed no misapprehension of fact(s) which, if true, would have justified Ahmad possessing a trafficking amount of drugs. Therefore, the trial court did not err by failing to give his requested jury charge on the defense of mistake of fact because the charge was not authorized by the evidence.[23]

3. Ahmad contends the trial court erred in sentencing him separately for trafficking in methamphetamine and trafficking in ecstasy because both crimes were supported by identical evidence. Specifically, Ahmad argues that because the same 29.01 grams of substance tested positive for methamphetamine and for ecstasy, both crimes required the same facts or proof. We disagree.

Georgia law prohibits multiple convictions if one crime is included in the other. Under the express terms of [OCGA § 16-1-7 (a) (1)], however, the rule prohibiting more than one conviction if one crime is included in the other does not apply unless the same conduct of the accused establishes the commission of multiple crimes.[24]

---

[22] *Phillips v. State*, 307 Ga. App. 366, 368 (2) (705 SE2d 287) (2010) (citations and punctuation omitted).

[23] See *Boatright*, supra; *Phillips*, supra.

[24] *Ledford v. State*, 289 Ga. 70, 71 (1) (709 SE2d 239) (2011) (citations and punctuation omitted).

In one count, Ahmad was indicted for "TRAFFICKING IN METHAMPHETAMINE, for that the said accused . . . did knowingly possess more than 28 grams of a mixture containing methamphetamine, a controlled substance, in violation of the Georgia Controlled Substances Act and OCGA § 16-13-31. . . ."

In a separate count, Ahmad was indicted for

> TRAFFICKING IN 3, 4 METHYLENEDIOXYMETHAM-PHETAMINE, A/K/A ECSTASY, for that the said accused . . . did knowingly possess more than 28 grams of a mixture containing 3, 4 methylenedioxymethamphetamine in violation of the Georgia Controlled Substances Act and OCGA Section 16-13-31.1 . . . .

Ahmad relies on the "actual evidence" test articulated in *Wofford v. State*.[25] The "actual evidence" test provides: "[i]f the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6."[26] However, in *Drinkard v. Walker*,[27] which overruled *Wofford*, the Supreme Court of Georgia disapproved the "actual evidence" test and adopted the "required evidence" test for determining when one offense is included in another under OCGA § 16-1-6 (1).[28] The Court stated:

> Under the "required evidence" test . . . the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . [A] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.[29]

An additional statutory provision concerning the prohibition against multiple convictions for closely related offenses is found in OCGA §

---

[25] 226 Ga. App. 487 (486 SE2d 697) (1997) (overruled by *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006)).

[26] *Wofford*, supra at 489 (1).

[27] Supra.

[28] Id. at 215-217.

[29] Id. at 215 (citations, punctuation and footnotes omitted).

16-1-6 (2);[30] that provision provides that one crime is included in another where it differs only in that it involves a "less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability."[31]

Ahmad is correct that the same 29.01 grams of substance which tested positive for methamphetamine also tested positive for ecstasy. Therefore both controlled substances shared in the same mixture, and thus the trafficking crimes were accomplished by the same conduct of the accused. However, merger was not required on that basis.[32] It is generally necessary to take the next step in the analysis by applying the required evidence test for determining when one offense is included in another.[33] Because trafficking in methamphetamine required possession of methamphetamine (a Schedule II controlled substance) and trafficking in ecstasy required possession of 3, 4-methylenedioxymethamphetamine (a Schedule I controlled substance), two discrete portions of the mixture were used to prove two distinct offenses.[34] Each crime required proof of a fact which the other did not,[35] as there was no evidence that chemical compounds or elements were shared between the drugs. Accordingly, the two counts did not merge, and the trial court did not err in sentencing him separately for the two crimes.

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

### DECIDED NOVEMBER 18, 2011.

*Travis A. Williams*, for appellant.
*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.

---

[30] Id. at 216, n. 32.

[31] Id.; OCGA § 16-1-6 (2).

[32] See *Ledford*, supra at 72 (1) (overruling *Nealey v. State*, 285 Ga. App. 334 (646 SE2d 471) (2007), because it erroneously skipped the "same conduct" analysis and unnecessarily examined whether one aggravated battery was included in another by utilizing the "actual evidence" test, which was rejected in *Drinkard*, supra).

[33] *Ledford*, supra.

[34] See *Satterfield v. State*, 289 Ga. App. 886 (658 SE2d 379) (2008) (defendant's conviction affirmed for possessing methamphetamine, amphetamine, cocaine, and marijuana in his bodily fluids where his urine tested positive for the drugs).

[35] *Ledford*, supra at 72-73 (1).