**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 2, 2019**

# In the Court of Appeals of Georgia

A19A2480. BURLISON v. THE STATE.

BROWN, Judge.

Following a jury trial, Jay Thomas Burlison was convicted of voluntary manslaughter and two counts of aggravated assault. He appeals the trial court's denial of his motion for new trial, contending that the trial court erred in charging the jury on flight. For the reasons that follow, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citation and punctuation omitted.) *Smith v. State*, 348 Ga. App. 643, 644 (824 SE2d 382) (2019). So viewed, the evidence at trial established that Burlison had been married to Mary Mealer for more than ten years before she filed for divorce on October 23, 1984. The couple had a troubled relationship, and Burlison physically beat Mealer several times over the years. Mealer testified that if she tried to leave Burlison after a beating, he would take the children, and she would end up going back to him. After Mealer filed for divorce in 1984, Burlison pulled a gun on her, threatened to kill her, and then beat her until she was unconscious in front of the children. When Mealer came to, she discovered that Burlison had boarded her and the children up inside of their mobile home with him. Police were able to get Mealer and the children out safely, and Burlison was arrested for the incident on October 29, 1984. During the pendency of the divorce, the trial court granted a temporary restraining order against Burlison, prohibiting him from contacting Mealer or entering her workplace at the Golden Gallon gas station. Mealer testified that Burlison told her she would be a "dead woman" before she divorced him.

On November 12, 1984 — two days before Mealer and Burlison were to appear for a hearing in the divorce proceeding — a Georgia State Patrol trooper had responded to a wreck on the highway near the Golden Gallon. The trooper, who knew

2

both Mealer and Burlison because they lived next door to his mother, testified that he saw Mealer and a gentleman he did not know drive by. Shortly after, Burlison stopped and spoke to the trooper before driving on. Burlison's stepdaughter testified that she had dinner with him that night. During dinner, Burlison told her that he was going to kill her mother and anyone with her the next time he saw her. As the stepdaughter drove home behind Burlison, she saw him pull into the Golden Gallon, get out of his car, and pull out a gun. She immediately drove to the next store to get help.

At the Golden Gallon, Burlison encountered Mealer and Ernest Griffin exiting the store. Mealer had started seeing Griffin after filing for divorce, and had been at Griffin's home eating dinner, but had left her car at the Golden Gallon. After exiting his car with a gun, Burlison immediately shot Griffin in the head. Mealer ran to her car and got into the driver side. Burlison shot Mealer three times through the driver side window before running out of bullets. As Mealer got out of the car and ran inside the Golden Gallon for help, Burlison beat her in the head with the butt of his gun. Mealer told the clerk inside to call 911. Burlison turned the gun on the clerk and pulled the trigger, but the gun was still out of bullets. Burlison then ran back outside and drove away in his car.

3

Ernest Griffin was transported to the hospital, but later died of a single gunshot wound to the head. Mealer had been shot multiple times, but survived. After taking statements from Mealer and the clerk at the scene, police started searching for Burlison, but failed to locate him until 34 years later in 2018, when Burlison signed up for Medicare, using his social security number. He was arrested in Tennessee and brought to Georgia for trial. A jury found Burlison guilty of manslaughter and two counts of aggravated assault. The trial court sentenced Burlison to 60 years, and he now appeals.

In his sole enumeration error, Burlison contends that the trial court erred in charging the jury on flight based on *Renner v. State*, 260 Ga. 515 (397 SE2d 683) (1990).[1] In *Renner*, the Supreme Court of Georgia adopted the rule that it is "error for a trial court in a criminal case to charge the jury on flight." Id. at 518. In doing so, it

---

[1] The trial court charged the jury as follows:

Evidence of an alleged flight has been introduced. Such evidence is governed by rules concerning circumstantial evidence that you have already been given. Furthermore, you may only consider it if you find more likely than not that the defendant actually committed the act and that the reason was to evade the charge now on trial.

Burlison objected to the charge.

quoted Justice Bell's concurrence in *Cameron v. State*, 256 Ga. 225, 227-228 (345 SE2d 575) (1986):

> The charge serves no real purpose, as it is a particularization of the general charge on circumstantial evidence, and as the state is free to use circumstantial evidence of flight to argue the defendant's guilt. Moreover, the charge inevitably carries with it the potential of being interpreted by the jury as an intimation of opinion by the court that there is evidence of flight and that the circumstances of flight imply the guilt of the defendant; this is especially true since the trial court does not give specific charges on other circumstances from which guilt or innocence may be inferred.

(Punctuation omitted.) *Renner*, 260 Ga. at 518, citing *Cameron*, supra. The Court clarified that the State would still be permitted to offer evidence of and argue flight.[2] Id.

The State urges us to revisit this rule based on Georgia's adoption of a new Evidence Code, and to adopt the Eleventh Circuit's rule allowing for a proper jury instruction on flight evidence. See, e.g., *United States v. Weaver*, 760 Fed.Appx. 745, 752 (II) (c) (11th Cir. 2019) ("If sufficient evidence is presented so that the jury could reasonably conclude that the defendant fled to avoid the charged crime, the district

---

[2] Burlison properly does not contend that evidence of flight is inadmissible.

5

court does not abuse its discretion by giving a flight instruction.") (citation omitted). According to the State, "[t]he foundational basis on which the flight evidence was admitted is now controlled by a State statute which mirrors the Federal rule and thus any legal issue arising with regard to that evidence should be decided based on Federal precedent in the absence of a definitive [Georgia] Supreme Court ruling on the issue."

We need not address this issue in the first instance because even if the trial court gave an erroneous jury charge, the charge was harmless given the overwhelming evidence of guilt in this case. See *Boatright v. State*, 289 Ga. 597, 600-602 (7) (713 SE2d 829) (2011) (trial court's jury instruction that was not properly adjusted to the evidence was harmless in light of the overwhelming evidence of appellant's guilt); *Abercrombie v. State*, 307 Ga. App. 321, 322-323 (1) (704 SE2d 483) (2010) (even if trial court's jury charge on rape created an "impermissible presumption," charge was harmless because the instruction was applied to an element of the crime not at issue and the evidence of guilt was overwhelming); *Green v. State*, 249 Ga. App. 546, 551-552 (2) (547 SE2d 569) (2001). Here, the two surviving victims of the incident knew Burlison and identified him as the shooter. A third witness to part of the incident testified that she saw Burlison exit his car at the Golden

6

Gallon and pull out a gun on the same night as the shooting. Accordingly, the trial court did not err in denying Burlison's motion for new trial on this ground.

*Judgment affirmed. Barnes, P. J., and Mercier, J., concur*.