A02A1778. MILNER v. THE STATE.
(574 SE2d 457)

MIKELL, Judge.

A jury convicted Yata Nicole Milner of armed robbery, and the trial court sentenced her to ten years confinement. Milner's codefendant, Timothy Heath, was convicted of armed robbery and possession of a firearm during the commission of a crime. Following the denial of Milner's motion for new trial, she filed the present appeal, arguing that the victim's in-court identification of her was impermissibly tainted by the leading questions of the prosecutor and that absent the identification, the evidence was insufficient to support her conviction. We disagree and affirm.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Williams v. State*, 233 Ga. App. 217 (1) (504 SE2d 53) (1998).

---

[6] *Limbrick v. State*, 152 Ga. App. 615 (263 SE2d 502) (1979).

So viewed, the evidence shows that on the night of August 29, 2000, 65-year-old Ralph Woods was beaten and robbed in his home. Woods testified that at approximately 10:50 that night, Shari Jackson and another woman came to his house and asked to use the bathroom. He testified that he knew Jackson because she was a former neighbor but that he did not know the other woman. According to Woods, after the two women entered his house, two men came in behind them. One of the men held a pistol to Woods' head, struck him repeatedly, and took his wallet. Woods described the man who held the weapon and beat him as having gray eyes. According to Woods, his wallet contained over $200, his identification, Social Security, and insurance cards, and photographs of family members. Woods testified that the two men fled on foot and that the two women drove off in a green, late model Oldsmobile Cutlass. A neighbor called 911.

Officer Lamar Eason of the Rome Police Department reported to Woods' home. Officer Eason testified that he observed a visible knot resembling a goose egg on the back of Woods' head. Woods told the officer that he had been robbed by two men and two women. In addition to identifying one woman as Jackson, Woods told Officer Eason that he believed the second woman was an individual named Shirley Sellers. Woods told the officer that he did not recognize either of the men.

Detective Tom Bojo testified that he showed Woods two photographic lineups containing pictures of Jackson and Sellers on September 21, 2000. According to Detective Bojo, Woods immediately selected the picture of Jackson and stated that she was one of the four people who participated in the robbery. Woods also identified Sellers, but he told the detective that he had been mistaken and that Sellers was "not the lady that robbed me." Woods explained that he knew Sellers and that she had robbed him on another occasion before moving to Mississippi, but that she did not participate in the robbery on August 29.

Detective Bojo interviewed Jackson on October 2, 2000. Jackson admitted that she participated in the robbery and told the detective that Milner and Heath were also involved. Police subsequently arrested Jackson, Milner, and Heath. Detective Bojo showed Woods photographic arrays containing pictures of Milner and Heath. According to the detective, Woods stated that "[t]hese pictures look old," and he was unable to identify either of the defendants' photographs.

At trial, when the state asked Woods to identify the gray-eyed man who beat him, Woods, who was looking at the jury box at the time, initially stated that he did not see the man in the courtroom. The state then asked Woods to "[l]ook really good around the courtroom" and finally asked, "[d]o you see him at this table right here,"

indicating the defense table where Milner and Heath were seated.[1] Referring to Heath, Woods responded, "I believe he's the boy who . . . hit me in the head with the pistol." The state subsequently asked Woods to identify the woman other than Jackson who participated in the robbery. Woods positively identified Milner and stated that he was sure that she was the second woman who was involved. Counsel for Milner did not object to the identification.

The charges against Jackson in this case were dismissed, presumably in connection with a plea bargain involving numerous charges unrelated to this incident. Jackson identified Milner and Heath at the trial. She testified that on the afternoon of August 29, 2000, she, Milner, and Heath discussed robbing someone that night; that Milner drove the vehicle, which was either a blue Oldsmobile Cutlass or Buick Regal; that she, Heath, and a man named Rico Carter[2] were passengers in the car; that when they arrived at Woods' home, she and Milner asked to use the bathroom, and Woods allowed them to come inside; that Heath entered the house, brandished a weapon, and struck Woods in the head; and that she ran from the house, got into the car with Milner, and subsequently reunited with Heath and Carter down the street. Jackson further testified that Milner and Heath told her they planned to flee to Ohio. According to Jackson, she, Milner, Heath, and Carter divided the money they took from Woods' wallet.

1. Milner argues that the victim's in-court identification of her was tainted by the state's suggestion that Woods look at the defense table when he was asked to identify Heath. She also contends that Woods was tentative when he identified her. Finding no error, we affirm.

The law is clear that "[i]t is error to allow testimony concerning a *pre-trial identification* of a defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification." (Emphasis supplied.) *Clark v. State*, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999), citing *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Reid v. State*, 210 Ga. App. 783, 786 (2) (437 SE2d 646) (1993). An identification procedure is deemed impermissibly suggestive when it "is the equivalent of the authorities telling the witness 'This is our suspect.'" (Citation omitted.) *Clark*, supra. However, in the case sub judice, there is no issue regarding the pre-trial identification procedure employed. In fact, the jury

---

[1] Heath's counsel objected to the question as leading. It does not appear from the record that the court ruled on the objection.

[2] Detective Bojo testified that Jackson did not mention Carter in her October 2, 2000 statement to the police.

heard evidence that Woods was unable to identify Milner or Heath from a photographic lineup. Rather, Milner assigns error only to Woods' in-court identification of her as one of the four individuals who participated in the beating and robbery.

There is an important distinction between a pre-trial identification procedure and a witness' in-court identification of a defendant, which is that when a defendant is currently on trial, the state has essentially told the witness, "this is our suspect." Common sense dictates that there is no secret as to who the defendant is once a trial has begun, and the state is not required to provide a lineup from which a witness may select the defendant when making an in-court identification. The state asked Woods, who was under oath, whether he saw the man who beat and robbed him sitting at a particular table. If Woods did not recognize the man, he would have said so. Milner fails to cite any authority for the argument that an in-court identification is subject to the same requirements as a pre-trial lineup or photographic array, and our research reveals none.

Milner's reliance on *Sims v. State*, 244 Ga. App. 823 (537 SE2d 133) (2000), is misplaced. First, that case is physical precedent only. Additionally, *Sims* is distinguishable from the case sub judice. In *Sims*, the police first asked the witness to identify the suspect "one-on-one," as they drove her past the man. After she was unable to identify the suspect, police told the witness they had enough evidence to arrest him without her identification, thereby telling her, " '[t]his is our man.' " Id. at 826 (1). A week later, the witness was asked to identify the man she had seen at the scene of the crime and again when the police had driven her past the suspect. When she selected the defendant, the police told her she had identified " 'the right one.' " Id. We held that this pre-trial identification procedure was impermissibly suggestive and that the resulting in-court identification of the defendant was tainted. Id. at 827 (1). Here, there was no such impermissibly suggestive pre-trial identification.

Further, we have held that a trial court properly allowed an "unusual" in-court identification procedure when an elderly witness had difficulty viewing a defendant. In *Hayslip v. State*, 154 Ga. App. 835 (270 SE2d 61) (1980), we held that it was not error when the trial court permitted an elderly witness to leave the witness stand and view the defendant at close range. Id. at 835-836 (2). We reasoned that

> [a]dditional relaxations are grounded in necessity. Thus, the judge, when need appears, will ordinarily permit leading questions to children, or to witnesses so ignorant, timid, weak-minded, or deficient in the English language, that they cannot otherwise be brought to understand what infor-

mation is sought. It is recognized . . . that in these cases the danger of false suggestion is at its highest, but it is better to face that danger than to abandon altogether the effort to bring out what the witness knows.

(Citation and punctuation omitted.) Id. In this case, it was clear that Woods was unfamiliar with the courtroom and did not know where to look when asked to identify Heath. Therefore, to the extent that the prosecutor's question could be deemed suggestive, "it was nonetheless proper under the circumstances of this case" for the court to allow the in-court identification of Milner and Heath. Id. at 835 (2).

Additionally, as a practical matter, we cannot conclude that the state's question was leading. The prosecutor asked Woods whether he saw his assailant at a particular table. "A question is leading when it is so framed as to suggest to the witness the answer which is desired; on the other hand, a question not suggesting the desired answer is not leading where it inquires only into a single fact." (Citations omitted.) *James v. State*, 215 Ga. 213, 214 (3) (109 SE2d 735) (1959). Accord *Ealey v. State*, 139 Ga. App. 110, 111 (227 SE2d 902) (1976). Here, the prosecutor did not point to Heath and ask Woods a question such as "this is the man who robbed you, is it not?" Rather, the state propounded a yes-or-no question regarding whether the witness saw his assailant at a particular table in the courtroom. It was up to the jury to determine Woods' credibility and the weight his testimony would be given. Accordingly, we find no error on this ground.

2. In her second enumerated error, Milner argues that absent Woods' identification of her, the evidence is insufficient to support her conviction. Based on our holding in Division 1, we need not address this error.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 18, 2002.

*Teddy L. Henley*, for appellant.
*Bryant G. Speed II, District Attorney, Kay A. Wetherington, Fred R. Simpson, Assistant District Attorneys*, for appellee.