**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0349. CULBREATH v. THE STATE.

MILLER, Judge.

Following a jury trial, Johnny Culbreath was convicted of four counts of aggravated assault with a deadly weapon (OCGA § 16-5-21 (a) (2)), three counts of false imprisonment (OCGA § 16-5-41), five counts of possession of a firearm during the commission of certain crimes (OCGA § 16-11-106), and one count each of burglary (OCGA § 16-7-1 (b)), aggravated assault with intent to rob (OCGA § 16-5-21 (a) (1)), attempted armed robbery (OCGA § 16-8-41), kidnapping (OCGA § 16-5-40), and cruelty to children in the first degree (OCGA § 16-5-70 (b)).[1] Culbreath

---

[1] At sentencing, as to the crimes against victim K. M., the trial court merged Culbreath's convictions for cruelty to children and false imprisonment into his kidnapping conviction; as to crimes against victim Margaret Parris, the court merged Culbreath's conviction for aggravated assault with intent to rob with his false imprisonment conviction.

appeals from the denial of his motion for new trial, contending that (1) the witnesses' in-court identifications were tainted; (2) his convictions for burglary, false imprisonment, and aggravated assault should have merged with his attempted armed robbery conviction; (3) the trial court erred in allowing the prosecutor to comment in closing on Culbreath's failure to present an alibi; and (4) the trial court erred in its analysis of his speedy trial claim. For the reasons that follow, we vacate Culbreath's conviction and sentence as to aggravated assault against victim Margaret Parris, and we vacate the denial of Culbreath's speedy trial motion for discharge and remand this case with direction. As to Culbreath's remaining contentions, we affirm the judgment.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that on July 14, 2009, Culbreath broke into the home of John and Margaret Parris in Cobb County. Mrs. Parris, who was 81 years old at the time of the offense and Mr. Parris, who was 83 years old at the time of the offense, lived in the downstairs unit of a home belonging to their daughter and son-in-law, Danny Carlson. The Parrises heard dogs barking, and Mrs. Parris went to investigate. When Mrs. Parris pushed open the downstairs bathroom door, Culbreath stepped out with a gun and put it to her head. Culbreath demanded to know where was the money and threatened to "blow

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

her brains out." Culbreath then forced Mrs. Parris to lie down on the floor and bound her wrists, ankles and mouth with duct tape. Culbreath then entered the dining room, where he pointed his gun at Mr. Parris, demanded money, asked him where he could find Danny Carlson, bound his hands, feet and mouth with duct tape, and put an afghan over his head. Culbreath then went upstairs, to the main level of the house, where he found then ten-year-old K. M., a tennis student of Carlson's, eating lunch in a room next to the kitchen. Culbreath pointed a gun at her and asked her to take him to Carlson, and they wandered the house, looking for him. Upon finding Carlson in his office on the top floor, Culbreath ordered Carlson and K. M. to the floor and bound them with duct tape. Culbreath also put a blanket over Carlson's head.

Meanwhile, Mr. Parris cut the tape off his hands and feet and retrieved a revolver from his bedroom drawer. Mr. Parris went upstairs and yelled when he saw Culbreath tying up Carlson. Culbreath fired at Mr. Parris, who fired three shots back. Culbreath yelled, grabbed his stomach, and ran downstairs and out of the house. Carlson, who had been shot in the leg, broke free from his bindings, retrieved his own gun, and went downstairs and out the door, but gave up his intent to chase Culbreath when he realized his gun was not loaded. Police recovered 9 mm ammunition and a magazine from the house.

3

At the end of the initial investigation, police had no suspects. After viewing an online news report about the crime, Culbreath's daughter called police and told them she believed her father might have been involved in the home invasion. Police visited Culbreath, who had suffered a recent gunshot wound to his side. A fingerprint on a piece of duct tape found in the downstairs dining room of the victims' home matched Culbreath's right thumb print. Police also recovered duct tape and spent 9 mm casings inside a stolen truck that Culbreath had been driving.

1. Culbreath contends that K. M. and Carlson's in-court identifications were tainted because they had been told that the perpetrator would be in court. We discern no error.

Setting aside the issue of whether Culbreath waived his claim of error with regard to K. M. by failing to object to her in-court identification, *Davis v. State*, 286 Ga. 74, 77 (2) (b) (686 SE2d 249) (2009), both of his claims fail.

"It is error to allow testimony concerning a pre-trial identification of a defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification." *Clark v. State*, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999). However, in-court identifications are not subject to the same requirements as pre-trial

4

identifications. *Millner v. State*, 258 Ga. App. 425, 427-428 (1) (574 SE2d 457) (2002). "Common sense dictates that there is no secret as to who the defendant is once a trial has begun, and the state is not required to provide a lineup from which a witness may select the defendant when making an in-court identification." Id. at 428 (1).

> The "totality of the circumstances" test for reliability . . . applies to extra-judicial pretrial identification procedures such as lineups, showups and photographic displays, not to the in-court procedures used in this case. Because pretrial identification procedures occur beyond the immediate supervision of the court, the likelihood of misidentification in such cases increases, and courts have required that pretrial identification procedures comport with certain minimum constitutional requirements in order to [e]nsure fairness. These extra safeguards are not, however, applicable to [the witnesses] in-court identification[s] of [Culbreath] in this case. Rather, [their] testimony is subject to the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial.

(Citations and punctuation omitted.) *Ralston v. State*, 251 Ga. 682, 683-684 (2) (309 SE2d 135) (1983).

Here, the evidence shows that both K. M. and Carlson had ample opportunity to view Culbreath at the time of the crime; they testified, under oath, that he was the

intruder; and they were subject to cross-examination.[3] Accordingly, the in-court identifications were properly admitted.

2. Culbreath also contends that the burglary against the Parrises, the false imprisonment counts related to the Parrises, and the aggravated assaults against the Parrises, K. M., and Carlson should have merged with his attempted armed robbery against Mr. and Mrs. Parris. We agree that the aggravated assault against Mrs. Parris (Count 2) should have merged with the attempted armed robbery (Count 5). The remaining crimes do not merge.

"Whether two offenses should be merged is a question of law, and we apply a 'plain legal error' standard of review." *Lavigne v. State*, 299 Ga. App. 712, 714 (2) (683 SE2d 656) (2009). A defendant may not be convicted of more than one crime if one crime is included in the other. See OCGA § 16-1-7 (a). In making this determination we apply the "required evidence" test:

> the applicable rule is that where the same act or transaction constitutes
> a violation of two distinct statutory provisions, the test to be applied to

---

[3] K. M. testified that Carlson and the prosecutor told her that the man with the gun would be in court, she might be asked whether she saw him in the courtroom and she should tell the truth. However, as noted, Culbreath's identity was no secret once his trial began. *Millner*, supra, 258 Ga. App. at 428 (1).

6

determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

(Punctuation and footnote omitted.) *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006).

(a) *Burglary and False Imprisonment.*

Under Georgia law, a person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime. A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon. Thus, the elements of burglary and attempted armed robbery and the culpable mental states required of these crimes are different.

(Citations and punctuation omitted.) *Carter v. State*, 299 Ga. App. 689, 690 (683 SE2d 654) (2009); see also OCGA §§ 16-7-1 (b); 16-4-1; 16-8-41 (a). "False imprisonment requires proof that a person, in violation of the victim's personal liberty, arrests, confines or detains the person without legal authority." *Jackson v.*

7

*State*, 298 Ga. App. 33, 34 (2) (679 SE2d 65) (2009). Thus, all three offenses – burglary, attempted armed robbery, and false imprisonment – require proof of at least one fact different from the others. See id. at 34 (2); *Carter*, supra, 299 Ga. App. at 690. Accordingly, these crimes did not merge.

(b) *Aggravated Assault.*

"Under [the required evidence] test, we examine whether each offense requires proof of a fact which the other does not." (Citation and punctuation omitted.) *Long v. State*, 287 Ga. 886, 888 (2) (700 SE2d 399) (2010). In *Long*, the Georgia Supreme Court concluded that, when considering two charges related to a single victim and arising from the same transaction, "there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery." Id. at 888-889 (2).

(i) *Aggravated Assaults Against K. M. (Count 11) and Carlson (Count 16)*. The aggravated assaults against K. M. and Carlson do not merge with Culbreath's attempted armed robbery conviction as a matter of law or fact because the crimes have different victims. *Verdree v. State*, 299 Ga. App. 673, 684 (6) (b) (683 SE2d 632) (2009). Notably, Culbreath was charged with attempted armed robbery only against Mr. and Mrs. Parris.

8

(ii) *Aggravated Assault Against Mr. Parris (Count 8)*. Here, Count 8 of the indictment charged Culbreath with aggravated assault against a person age 65 or older with a handgun, whereas Count 5 charged Culbreath with attempted armed robbery against both Parrises. Since the evidence supported a finding that the conviction for aggravated assault against Mr. Parris was premised on different conduct than the evidence supporting the conviction for attempted armed robbery, the two offenses do not merge.

As noted above, when there is one act or transaction, there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery. *Long*, supra, 287 Ga. at 888-889 (2). "The doctrine of merger does not apply, however, if the multiple convictions are not premised upon the same conduct." *Johnson v. State*, 305 Ga. App. 838, 840 (2) (700 SE2d 726) (2010). Moreover, where one crime is completed before the other begins, there is no merger. *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998) (aggravated assault and armed robbery did not merge because aggravated assault was complete when defendant threatened victim with knife, and defendant then went on to attack victim and take her belongings). Here, Culbreath's attempted robbery of Mr. Parris occurred downstairs, when Culbreath first encountered Mr. Parris and pointed a gun at him, demanding

9

money. The evidence also supported a finding that the aggravated assault on Mr. Parris occurred upstairs when Culbreath fired his gun at Mr. Parris. Accordingly, the evidence of Culbreath's shooting at Mr. Parris upstairs was not the same evidence used to prove the attempted armed robbery. See *Wright v. State*, 243 Ga. App. 167, 169 (532 SE2d 724) (where evidence is not "used up" to prove one crime, it is available to support a separate conviction.) Therefore, the aggravated assault against Mr. Parris and the attempted armed robbery did not merge. Id.

(iii) *Aggravated Assault Against Mrs. Parris (Count 2).* Count 2 charged Culbreath with aggravated assault against a person age 65 or older with a handgun. The evidence showed that Culbreath approached Mrs. Parris, pointed a gun at her, demanded money, and threatened her. Culbreath then forced Mrs. Parris to lie down on the floor and he bound her hands, feet, and mouth with tape. The State argues that the aggravated assault and attempted armed robbery against Mrs. Parris do not merge because the State had to show an additional element of aggravated assault not included in armed robbery: namely, that Mrs. Parris was age 65 or older. We do not agree.

The age-related provisions of aggravated assault are penalty enhancements and they do not create a separate offense. In *Bundren v. State*, 247 Ga. 180, 181 (2) (274

10

SE2d 455) (1981), the Supreme Court held that legislative intent determines whether an amendment creates a separate crime or is simply a penalty enhancement. The General Assembly enacted the age-related provisions of the aggravated assault statute "so as to change the penalty provisions relating to persons convicted of the [crime] of aggravated assault." Ga. L.1984, p. 900. Accordingly, the victim's age is not a separate element of the crime, and the convictions must merge where, as here, the two crimes occurred against the same victim as part of the same act or transaction. See *Long*, supra, 287 Ga. at 888-889 (2). We therefore vacate Culbreath's conviction for aggravated assault against Mrs. Parris and remand to the trial court for resentencing.

3. Culbreath also contends that the trial court erred in allowing the prosecutor to comment during closing argument on Culbreath's failure to present an alibi. We do not agree.

Defense counsel told the jury during closing argument that Culbreath's gunshot wound had "nothing to do with this case" and "[w]e don't know when it happened." Defense counsel then said that after the case was over, jurors would have an opportunity to talk with him about the gunshot wound. The prosecutor responded that there was no evidence that the gunshot wound was unrelated to the case and that the jury was sworn to return a verdict based on the evidence. The prosecutor went on to

11

state that other witnesses had been eliminated due to their alibis and that there were no alibi witnesses here. Defense counsel objected that the prosecutor was shifting the burden of proof to Culbreath and the trial court overruled the objection.

During closing argument, the State may comment on the general failure of the defense to produce evidence or rebut the State's evidence placing defendant at the scene of the crime. *Ponder v. State*, 268 Ga. 544, 545 (2) (491 SE2d 363) (1997) (prosecutor made authorized comment on defendant's failure to rebut State's proof placing defendant at scene of crime). Moreover, the trial court instructed the jury that counsels' closing statements were not evidence and that the case was to be decided on the facts in evidence. "[Q]ualified jurors under oath are presumed to follow the instructions of the trial court." *Allen v. State*, 277 Ga. 502, 504 (3) (c) (591 S.E.2d 784) (2004). Accordingly, the trial court properly overruled Culbreath's objection. *Ponder*, supra, 268 Ga. at 545 (2).

4. Finally, Culbreath argues that the trial court failed to properly analyze his speedy trial claim and, therefore, remand is required so that the trial court can enter findings of fact and conclusions of law. We agree, and remand the case to the trial court so that an adequate record can be made.

12

Every constitutional speedy trial claim is subject to a two-tiered analysis as set forth in the United States Supreme Court decisions *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LEd2d 101) (1972) and *Doggett v. United States*, 505 U. S. 647 (II) (112 SCt 2686, 120 LEd2d 520) (1992). As for the first tier of the analysis, it must be determined if the delay in question is presumptively prejudicial. If not, there has been no violation of the constitutional right to a speedy trial and the second tier of analysis is unnecessary. If, however, the delay is determined to be presumptively prejudicial, then the [trial] court must engage the second tier of analysis by applying a four-factor balancing test to the facts of the case. Those four factors include: (1) whether the delay is uncommonly long; (2) reason for delay/whether the government or the defendant is more responsible; (3) defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant. On appeal, the relevant standard of review is whether the trial court abused its discretion.

(Citations omitted.) *Rafi v. State*, 289 Ga. 716, 716-717 (2) (715 SE2d 113) (2011). The trial court's order, however, "*must* provide sufficient findings of fact and conclusions of law to permit this Court to determine if the trial court properly exercised its discretion under the *Barker* analysis." (Citation omitted; emphasis supplied.) *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011); see also *Higgenbottom v. State*, 288 Ga. 429, 430-431 (704 SE2d 786) (2011) (absent findings

13

of fact and conclusions of law consistent with *Barker*, there is no exercise of discretion for this Court to review).

(a) Presumptive Prejudice

Generally, a delay of one year is considered presumptively prejudicial. *Ruffin v. State*, 284 Ga. 52, 55 (2) (a) (663 SE2d 189) (2008). The delay should be calculated from the date of defendant's arrest or other formal accusation until the date on which the defendant's speedy trial motion was granted or denied. *Porter*, supra, 288 Ga. at 526 (2) (b). Here, the record shows that Culbreath was arrested on July 22, 2009. Culbreath filed a constitutional demand for speedy trial and an out-of-time statutory demand for speedy trial on November 11, 2010. The trial court denied Culbreath's speedy trial motion on January 14, 2011, and in its order the trial court correctly determined that the 18-month delay here raised a presumption of prejudice, requiring full analysis of the four *Barker-Doggett* factors. See *State v. Pickett*, 288 Ga. 674, 676 (2) (b) (706 SE2d 561) (2011).

(b) *Barker-Doggett* Balancing Test

With regard to the balancing test,

[n]o one factor is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. The four factors emphasized

14

in *Barker* and *Doggett* do not constitute an exhaustive list; they have no talismanic qualities and must be considered together with such other circumstances as may be relevant given the animating principles behind the speedy trial guarantee. Thus, the second stage of the constitutional speedy trial analysis requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy trial cases on an ad hoc basis.

(Footnotes omitted.) *Ruffin*, supra, 284 Ga. at 56 (2) (b). This Court is not permitted to weigh the *Barker-Doggett* factors in the first instance where the trial court has failed to do so. See *Pickett*, supra, 288 Ga. at 679-680 (2) (d).

Accordingly, we look to the trial court's order in this case and examine each factor in turn.

(i) Whether the Pre-trial Delay Was Uncommonly Long.

As the Georgia Supreme Court has held:

[t]he length of the pretrial delay in absolute terms plays a role in the threshold determination of presumptive prejudice. However, it also wears another hat as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis. It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the

15

*Barker-Doggett* analysis. As the [U. S.] Supreme Court has explained, this latter enquiry is significant to the speedy trial analysis because the presumption that pretrial delay has prejudiced the accused intensifies over time. The uncommon length of the pretrial delay thus merits consideration beyond its use as a liminal screening mechanism.

(Punctuation and footnotes omitted.) *Ruffin*, supra, 284 Ga. at 56-57 (2) (b) (i). In this case, the trial court made no findings as to whether the delay was uncommonly long given the circumstances of the case. To the extent the trial court overlooked this factor in the four-factor balancing process, it erred. See id. at 59 (2) (b) (i).

(ii) The Reason for the Delay.

With regard to the 18-month delay between Culbreath's arrest and trial court's denial of his motion, the trial court found that discovery had been ongoing, Culbreath expressed his desire for a speedy trial to his initial counsel, but she was concerned about the complexity of the case and, ultimately, initial counsel withdrew from the case for personal reasons and new counsel was appointed. The trial court erred, however, because it did not indicate whether it attributed the delay to Culbreath or the State and what weight, if any, it gave to the delay. This Court is prohibited from making factual findings and weighing the results of those findings in the first instance. See *Porter*, supra, 288 Ga. at 527 (2) (c) (2).

16

(iii) Culbreath's Assertion of His Right.

The trial court found that Culbreath did not file his speedy trial demand until sixteen months after his arrest and seven months after his second trial counsel was appointed. The trial court, however, did not explicitly indicate what weight, if any, it attributed to Culbreath's delay in asserting his rights.

(iv) Whether Culbreath Suffered Prejudice as a Result of the Delay.

The fourth and final factor is prejudice.

> The concept of prejudice in this context is not limited to consideration of the likely effect the pretrial delay had or might have on the ultimate outcome of the trial. . . . The Supreme Court has identified three values underlying the speedy trial guarantee that warrant special consideration in the prejudice inquiry. The central aims of the Founders in enacting the Speedy Trial Clause were to (i) prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense would be impaired.

(Punctuation and footnotes omitted.) *Ruffin*, supra, 284 Ga. at 64-65 (2) (b) (iv). In this case, the trial court noted that Culbreath asserted oppressive pretrial detention but found that Culbreath had not shown any specific impairment to his defense.

(c) Balancing the Four Factors.

17

The Georgia Supreme Court has made clear that trial courts must "*consider and weigh* all four factors under the circumstances of each case." (Emphasis supplied.) *Porter*, supra, 288 Ga. at 533 (1) (d). As set forth above, the trial court failed to make findings of fact regarding whether the delay was uncommonly long; the trial failed to indicate whether it attributed the reason for the delay to Culbreath or to the State and what weight it gave to this factor; and the trial court failed to indicate what weight, if any, it gave to the timing of Culbreath's motion.

While the trial court made some findings of fact, it failed to weigh various factors for or against Culbreath and, therefore, did not properly balance the four *Barker-Doggett* factors. As set forth above, it is not the job of this Court to weigh the *Barker-Doggett* factors in the first instance. *State v. Johnson,* 291 Ga. 863, 868 (3) (734 SE2d 12) (2012); *Pickett*, supra, 288 Ga. at 679-680 (2) (d). Accordingly, the trial court's order on Culbreath's motion for speedy trial must be vacated and the case remanded for the entry of a proper order, consistent with this opinion. *Porter*, supra, 288 Ga. at 533-534 (2) (e); *Higgenbottom*, supra, 288 Ga. at 430-431.

In sum, we find no error in the trial court's admission of the witnesses' in-court identifications or in the prosecutor's comments on Culbreath's failure to present an alibi. We vacate Culbreath's conviction and sentence as to aggravated assault against

18

victim Margaret Parris and remand for resentencing, but we find no merger of the remaining convictions. We vacate the denial of Culbreath's speedy trial motion and remand the case with direction.

*Judgment affirmed in part and vacated in part and remanded with direction. Doyle, P. J., and Dillard, J., concur.*