**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**April 20, 2020**

# In the Court of Appeals of Georgia

A20A0513. SMITH v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Nathaniel Smith on one count of riot in a penal institution, two counts of aggravated assault, and six counts of simple assault. On appeal, Smith challenges the sufficiency of the evidence supporting one of the aggravated-assault convictions and further contends that the trial court erred in denying his claim of ineffective assistance of counsel and failing to merge his convictions for sentencing purposes. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in early February 2010, Smith was incarcerated in the Augusta-Richmond County Jail. On February 5, 2010, the inmates housed on the sixth floor of the jail, including

---

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

Smith, were angry because their "store call" privileges[2] had been suspended for failing to follow jail procedures. Around 7:00 p.m., Deputy Diaz—who was working on the sixth floor—noticed that several inmates in the common area were playing cards, which was a violation of jail rules prohibiting gambling. As a result, Deputy Diaz—using the intercom system—ordered the inmates to turn over their cards. But instead of complying with this directive, many of the inmates began belligerently cursing at the deputies. And tensions continued to rise when deputies entered the common area to confiscate the cards. At that point, Deputy Diaz ordered the inmates to lock-down, meaning that they had to return to their individual cells. But the inmates again refused to comply with this directive.

In an effort to enforce the lock-down, Deputy Diaz called for more deputies to come to the sixth floor. And in short order, Deputies Diaz, Folk, Fleming, Van Dyke, Gore, Baldowski, Cooper, and Gainey entered the sixth floor common area and ordered the nearly 30 inmates to lock-down. The inmates still refused to comply with this directive, and the deputies noticed that some of them were now wielding mop and broom handles.

---

[2] "Store call" entailed allowing the inmates to purchase snacks and other items at the jail canteen.

2

During this standoff, several deputies noticed that Smith—who was wielding a broom handle—was yelling and inciting the other inmates to violence. A moment later, as Deputy Fleming attempted to speak to one inmate, another one punched him in the head from behind. At the same time, Smith struck Deputy Van Dyke and another inmate punched Deputy Baldowski. Chaos then erupted, with inmates running at the deputies and striking them with their fists and feet, as well as mop and broom handles. One inmate stabbed Deputy Gore in the side of the head with a pencil, and several inmates, including Smith, punched and kicked Deputy Fleming after he fell to the ground. Significantly outnumbered, the deputies retreated from the common area, with Deputies Cooper and Folk assisting Deputy Fleming, who was badly injured. At this point, one of the jail supervisors called in road patrol deputies for backup, and upon their arrival, the inmates finally returned to their cells.

Thereafter, the State charged Smith, via indictment, with one count of riot in a penal institution, ten counts of aggravated assault (with each count related to a separate deputy), and one count of obstruction of a law-enforcement officer. The case then proceeded to trial, during which the State presented the foregoing evidence. And at the conclusion of the trial, the jury found Smith guilty on the count of riot in a penal institution, the counts of aggravated assault upon Deputies Fleming and Van

3

Dyke, and six counts of simple assault as lesser-included offenses of aggravated assault.[3] The trial court then imposed a sentence totaling 60 years in confinement.

Subsequently, Smith obtained new counsel and filed a motion for new trial, in which he argued, *inter alia*, that his trial counsel rendered ineffective assistance. The State filed a response, and the trial court held a hearing, during which Smith's trial counsel testified regarding her representation. At the conclusion of the hearing, the trial court took the matter under advisement. Several months later, it issued an order denying Smith's motion for new trial. This appeal follows.

1. Smith contends that the evidence was insufficient to support his conviction on the charge of aggravated assault upon Deputy Fleming. This contention lacks merit.[4]

---

[3] The State previously agreed to nolle pros two of the aggravated-assault charges and the obstruction-of-a-law-enforcement charge.

[4] Although Smith has not specifically challenged the sufficiency of the evidence supporting his remaining convictions, we have reviewed the record and find the evidence sufficient to enable a jury to conclude beyond a reasonable doubt that he was guilty of all the remaining offenses of which he was convicted at trial. *See Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.").

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[5] And in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[6] The jury's verdict will be upheld, then, so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[7] With these guiding principles in mind, we turn to Smith's challenge to the sufficiency of the evidence supporting his conviction on the charge of aggravated assault upon Deputy Fleming.

---

[5] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[6] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson*, 443 U.S. at 319 (III) (B) (noting that the relevant question after viewing the evidence in the light most favorable to the prosecution is whether any rational jury could found the essential elements of the crime beyond a reasonable doubt).

[7] *Miller v. State*, 273 Ga. App. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

Aggravated assault is committed when a person "assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]"[8] And it is well established that "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[9] Importantly, whether a defendant was "a party to the crime and aided and abetted in the commission of a crime is a matter for the jury."[10] Moreover, while it is true that mere presence at the scene of a crime is insufficient to convict one of being a party to the crime, the jury "may infer criminal intent from the person's conduct before, during, and after the commission of the crime."[11]

---

[8] OCGA § 16-5-21 (a) (2) (2006). In 2014, subsection (a) of this statute became subsection (b) but was otherwise unchanged. *See* Ga. L. 2014, § 1 (effective July 1, 2014). But in 2017, the General Assembly removed the 2014 version of subsection (a), with the result being that the 2014 version of subsection (b) once again became subsection (a). *See* Ga. L. 2017, § 3-2 (effective July 1, 2017). Consequently, current subsection (a) is identical to the 2006 version (under which the State charged Smith).

[9] OCGA § 16-2-20 (a).

[10] *Blanks v. State*, 311 Ga. App. 351, 352 (1) (715 SE2d 762) (2011) (punctuation omitted).

[11] *Id.* (punctuation omitted).

6

In this case, the fourth count of the indictment charged Smith with aggravated assault by alleging that he "did make an assault upon . . . Deputy William Fleming with hands and feet, objects which when used offensively against another person are likely to result in serious bodily injury, by punching and kicking the deputy . . . resulting in bruising about the body, fractured ribs and back spasms . . . ." And at trial, the State presented evidence that Smith struck Deputy Van Dyke and that he was one of several inmates who punched and kicked Fleming after he fell to the ground. Given these circumstances, the evidence was sufficient to support Smith's conviction on the charge of aggravated assault upon Deputy Fleming,[12] or at the very least, that

---

[12] *See Ferguson v. State*, 322 Ga. App. 565, 567 (1) (745 SE2d 784) (2013) (holding that evidence defendant beat victim with his hands was sufficient to authorize guilty verdict on aggravated assault charge); *Lewis v. State*, 317 Ga. App. 218, 220 (1) (735 SE2d 1) (2012) (physical precedent only as to Divisions 2 and 5) ("Although hands and feet are not considered per se deadly weapons within the meaning of OCGA § 16-5-21 (a) (2), the jury may find them to be so depending on the circumstances surrounding their use, including the extent of the victim's injuries.").

he was party to that crime.[13] Accordingly, the trial court did not err in denying Smith's motion for new trial as to that issue.

2. Smith also maintains that his trial counsel rendered ineffective assistance by failing to request that he undergo a psychiatric evaluation after he sent her a delusional love letter. We disagree.

In order to evaluate Smith's claims of ineffective assistance of counsel, we apply the familiar two-pronged test established in *Strickland v. Washington*,[14] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[15] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range

---

[13] *See Kinsey v. State*, 326 Ga. App. 616, 623 (2) (b) (757 SE2d 217) (2014) (holding that evidence defendant was part of a group of men who kicked and punched victim was sufficient to authorize jury to find defendant guilty as a party to the crime of aggravated assault); *Romero v. State*, 307 Ga. App. 348, 350-51 (705 SE2d 195) (2010) (finding that evidence was sufficient to show that defendant was a party to aggravated assault when defendant accompanied attacker to the crime scene and stood by while another man attacked the victim).

[14] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[15] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

of reasonable professional conduct, and a criminal defendant must overcome this presumption.[16] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[17] Importantly, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were "so patently unreasonable that no competent attorney would have followed such a course."[18] And unless clearly erroneous, we will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[19] Bearing this analytical framework in mind, we will consider Smith's specific claim of ineffective assistance of counsel.

---

[16] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[17] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

[18] *Id.*

[19] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

At some point after retaining new counsel, Smith's trial counsel provided his new counsel with her case file. The file included a love letter that Smith had written to his trial counsel during her representation. In the letter, Smith informed his counsel that he dreamed they would travel to space, where he would propose and give her "the moon as an engagement present." And during the hearing on Smith's motion for new trial, his appellate counsel questioned trial counsel regarding the letter, and, specifically, how she handled the issue. Trial counsel recalled the letter, and while she could not remember exactly how she responded, she stated that she would have either ignored it or explained to Smith that their relationship was strictly professional. In fact, trial counsel testified that she received similar letters from other clients, and that such behavior did not necessarily result in her recusing from representation. Additionally, trial counsel further testified that other than sending her the letter, Smith had not acted inappropriately toward her and, importantly, that she did not believe he was incompetent to stand trial or failed to understand the nature and gravity of the charges.

Nevertheless, Smith argues that his trial counsel rendered ineffective assistance by failing to further investigate his mental competency upon receiving his love letter. But given trial counsel's testimony that Smith seemed competent and understood the

10

charges and proceedings against him, it was not objectively unreasonable for her not to seek a mental evaluation.[20] Moreover, Smith has failed to demonstrate any sort of prejudice. Indeed, the burden is on the defendant to show that his "attorney's omissions have prejudiced [his] case."[21] And if a defendant wishes to claim ineffectiveness based on trial counsel's failure to request a psychiatric evaluation, he must "show a likelihood that such an evaluation would have affected the outcome at trial."[22] But here, the record fails to include any medical records, expert testimony, or other evidence of diagnosis or treatment that would cast light on the question of Smith's mental status. Consequently, Smith has failed to carry his burden to prove the prejudice prong of his claim that trial counsel was ineffective for failing to request a mental competency evaluation.[23] As a result, we conclude that the trial court did not

---

[20] *See Brown v. State*, 302 Ga. 813, 815 (2) (809 SE2d 742) (2018) (holding that given trial counsel's observations of defendant leading up to trial, and the curious timing of the alleged change in defendant's mental status, it was not objectively unreasonable for trial counsel to decide not to seek a second mental evaluation).

[21] *Id.* (punctuation omitted).

[22] *Id.* (punctuation omitted).

[23] *See id.* (holding that by failing to include in the record any medical records, expert testimony, or other evidence of diagnosis or treatment that would cast light on the question of defendant's competency, defendant failed to show that she was prejudiced by trial counsel's failure to request an additional psychiatric examination);

err in denying Smith's claim that his trial counsel rendered ineffective assistance in this regard.

3. Smith further contends that the trial court erred in failing to merge his assault convictions with his riot-in-a-penal-institution conviction for sentencing purposes. Again, we disagree.

The question of whether offenses merge is, of course, a legal question that we review *de novo*.[24] This issue comes into play when a defendant is convicted of multiple crimes based upon the same act, and "the principle of factual merger operates to avoid the injustice."[25] And under Georgia law, one crime is included in another when

---

*Stodghill v. State*, 351 Ga. App. 744, 747-48 (3) (832 SE2d 891) (2019) (holding that defense counsel's failure to persist in requesting competency evaluation after trial court denied initial requests did not prejudice defendant, and, thus, did not constitute ineffective assistance of counsel, in the absence of evidence, such as diagnosis or treatment, that defendant was in fact incompetent to stand trial).

[24] *Morris v. State*, 340 Ga. App. 295, 312 (7) (797 SE2d 207) (2017); *accord Haynes v. State*, 322 Ga. App. 57, 60 (2) (743 SE2d 617) (2013).

[25] *Morris*, 340 Ga. App. at 312 (7) (punctuation omitted); *see also Regent v. State*, 299 Ga. 172, 175 (787 SE2d 217) (2016) ("While an accused may be *prosecuted* for more than one crime arising out of the same criminal conduct, he may not be *convicted* of more than one crime arising out of the same criminal conduct [when] one crime is included in the other.").

(1) [i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged; or

(2) [i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.[26]

To answer the question of whether offenses merge, the Supreme Court of Georgia has adopted the "required evidence" test set forth by the Supreme Court of the United States to resolve these situations.[27] So, when determining whether convictions for multiple crimes merge for purposes of sentencing, "[t]he applicable rule is that [when] the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[28]

---

[26] OCGA § 16-1-6 (1)-(2).

[27] *Drinkard v. State*, 281 Ga. 211, 212, 214 (636 SE2d 530) (2006); *accord Morris*, 340 Ga. App. at 313 (7); *see also Blockburger v. United States*, 284 U.S. 299, 304 (52 SCt 180, 76 LEd 306) (1932).

[28] *Drinkard*, 281 Ga. at 215 (punctuation omitted) (quoting *Blockburger*, 284 U.S. at 304).

13

Importantly, though, when "one crime is completed before the other begins, there is no merger."[29]

At the time the melee at the Augusta-Richmond County jail occurred, OCGA § 16-10-56 (a) provided: "Any person legally confined to any penal institution of this state or of any political subdivision of this state who commits an unlawful act of violence or any other act in a violent or tumultuous manner commits the offense of riot in a penal institution."[30] In addition, the applicable version of OCGA § 16-5-21 (a) (2) provided: "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . ."[31] And under the applicable version of OCGA § 16-5-20 (a) (2),

---

[29] *Culbreath v. State*, 328 Ga. App. 153, 157 (2) (b) (ii) (761 SE2d 557) (2014); *accord Cuyler v. State*, 344 Ga. App. 532, 543 (4) (811 SE2d 42) (2018); *see Henderson v. State*, 285 Ga. 240, 244 (4) (675 SE2d 28) (2009) (holding that convictions for aggravated assault and armed robbery did not merge for sentencing purposes when the aggravated assault was completed outside of a home before the armed robbery began inside the home).

[30] *See* OCGA § 16-10-56 (a) (1995). In 2017, subsection (a) of this statute became subsection (b) and was slightly revised in a manner that has no bearing on this appeal. *See* Ga. L. 2017, § 3-5 (effective July 1, 2017).

[31] *See* OCGA § 16-5-21 (a) (2) (2006); *see also supra* note 8.

14

"[a] person commits the offense of simple assault when he or she . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."[32]

Here, the State charged Smith with riot in a penal institution by alleging that he "did become verbally and physically aggressive towards the deputies while . . . legally confined to the Augusta Richmond County jail. . . ." Additionally, it charged him with aggravated assault by alleging, with only slight variations depending on the specific victim, that he "did make an assault upon [several individual deputies]" with hands, feet, or both in some instances, "objects which when used offensively against another person are likely to result in serious bodily injury. . . ." And consistent with the indictment, the evidence shows that the incident began with several inmates, including Smith, belligerently refusing to give deputies their playing cards, and then angrily cursing at the deputies when the lock-down was ordered. Indeed, the evidence demonstrates that Smith was one of the instigators in fomenting this aggression. A few moments later, the actual physical violence erupted, with Smith and other inmates punching and kicking several of the deputies. Thus, under these particular circumstances, the physical violence inflicted upon the deputies and attempts to do

---

[32] *See* OCGA § 16-5-20 (a) (2).

15

so constituted the aggravated and simple assaults, respectively, that ensued *after* the offense of riot in a penal institution was completed. Accordingly, the trial court did not err in refusing to merge those convictions.[33]

For all these reasons, we affirm Smith's convictions and the denial of his motion for new trial.

*Judgment affirmed. Rickman and Brown, JJ., concur.*

---

[33] *See Henderson*, 285 Ga. at 244 (4) (holding that convictions for aggravated assault and armed robbery did not merge for sentencing purposes when the aggravated assault was completed outside of a home before the armed robbery began inside the home); *Cuyler*, 344 Ga. App. at 543 (4) (holding that aggravated assault conviction did not merge with armed robbery conviction when aggravated assault occurred after robbery was completed); *Culbreath*, 328 Ga. App. at 157 (2) (b) (ii) (holding that convictions for attempted armed robbery and aggravated assault did not merge because the attempted robbery of the victim occurred downstairs when the defendant pointed a gun at the victim and demanded money, while the aggravated assault occurred upstairs when the defendant shot at the victim). *Cf. Green v. State*, 170 Ga. App. 594 (317 SE2d 609) (1984) (holding that aggravated assault upon a peace officer merged into mutiny-in-a-penal institution conviction because aggravated-assault charge was established by proof of less than all facts required to establish commission of mutiny, and facts alleged to support aggravated assault charge in the indictment were same facts used to support mutiny charge).