A00A2469. JACKSON v. THE STATE.
(541 SE2d 701)

ELDRIDGE, Judge.

A Turner County jury found Zachery Jackson guilty of being a party to the crime of the burglary of R. Giddens' home in Ashburn. Jackson appeals by challenging the sufficiency of the evidence and by claiming error in the content of the trial court's charge to the jury on "mere presence." Finding no merit to either contention, we affirm.

1. Jackson first challenges the sufficiency of the evidence corroborating the testimony of co-defendant James Hope, who pled guilty prior to trial and testified for the State. In that regard,

[i]n Georgia, a defendant may not be convicted on the uncorroborated testimony of an accomplice. OCGA § 24-4-8. The corroboration must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. The corroborating evidence may be circumstantial. The sufficiency of corroborating evidence should be peculiarly a matter for the jury to determine.[1]

---

[1] (Citations and punctuation omitted.) *Short v. State*, 234 Ga. App. 633, 635 (507 SE2d 514) (1998).

Here, Hope's testimony established that, using his own car, he drove appellant Jackson and a third co-defendant, Anthony Bentley,[2] to victim Giddens' house; that Jackson was in the front passenger seat and Bentley was sitting in the backseat; that, upon arrival at the victim's residence, Jackson and Bentley entered the house and Giddens' safe was brought into the front yard; that Giddens returned home unexpectedly in the middle of the burglary; that Jackson and Bentley saw Giddens and jumped back into Hope's car; that Hope drove off into a field and Giddens gave chase; that Hope then engaged in a "high speed chase through the cotton patch"; that the chase dead-ended in the woods and Hope "couldn't find a way out"; that Jackson, Hope, and Bentley abandoned the car and ran though the woods on foot; that Jackson and Bentley were "hanging buddies in the street so they decided to go their way" and Hope went his way alone; and that Hope made his way to a dirt road where he caught a ride home.

Hope's testimony was corroborated by testimony from victim Giddens and the officers involved in the case which established that Giddens came home in the middle of the burglary; that a car was parked in his drive; that one man was in his yard and another man was exiting Giddens' house carrying his safe, which he dropped in the yard; that, upon seeing Giddens, one of the two men jumped into the passenger side of the front seat and the other into the backseat of the car; that the car took off into a field and Giddens gave chase; that the perpetrators drove into a wooded area where "[t]here was no way out"; that the perpetrators abandoned the car and took off through the woods on foot; that the car had paperwork in it showing Hope as its owner; that the police called a canine unit into the area where the car was abandoned and proceeded to track the suspects through the woods in that area; that a helicopter unit was called in; that the police were also "riding the roads, trying to keep them pinned down to an area"; that Jackson and Bentley were found on a dirt road in the general area the police had cordoned off; that Jackson and Bentley were on foot "in the middle of nowhere"; that they were very muddy and their clothes were disheveled; that their appearance was consistent with "where the chase had gone through"; and that both men "looked very out of place in that area" of Turner County. When asked what they were doing, the men replied that "they were just walking," although both men apparently lived in Worth County. We find this evidence provides sufficient corroboration of co-defendant Hope's testimony so that a rational trier of fact could find Jackson guilty beyond a reasonable doubt of being a party to the crime of bur-

---

[2] The jury hung on the issue of Bentley's guilt.

glary as charged in the indictment.[3]

2. Jackson claims reversible error in the trial court's jury instruction on "mere presence." We disagree.

Jackson took the stand in his defense and testified that co-defendant Hope was the only perpetrator of the burglary and that he and Bentley had unknowingly accepted a ride with Hope just prior thereto. Jackson testified that he fled from the scene because victim Giddens had a gun. In furtherance of this defense, Jackson submitted a request to charge on "mere presence" that stated "[m]ere presence at the scene of a crime or where criminal acts are committed, even when coupled with flight, is insufficient to authorize conviction."

The trial court agreed to give an instruction on this principle that was phrased, in essence, "presence and flight without more is not enough." The record shows that the trial court specifically intended that " '[w]ithout more' is going to be right after 'even if coupled with flight.' It's going to be phrased just like I have it." Defense counsel agreed with this instruction. However, the record reflects that, when charging the jury, the trial court stated, "[t]he presence of a person at the scene of the commission of a crime at the time of its perpetration, even when coupled *without* flight, without more, will not authorize a jury to find the person who was merely present guilty." (Emphasis supplied.)

Clearly, based on the trial court's expressed intentions, "without flight" was a palpable slip of the tongue. But we do not find reversible error therein. Jackson was charged in the indictment as a party to the crime; his presence at the scene and his conduct with his co-defendants before, during, and after the offense, including his flight with Hope and Bentley, may be used to infer his guilt as a party to the crime.[4] Thus, any misstatement regarding "flight" in relation to "mere presence" is rendered harmless. The court's charge on "mere presence" was otherwise a correct statement of the law, and "[u]nder such circumstances, viewing the charge as a whole, we find that the error caused by the trial court's slip of the tongue was harmless, and as such, does not warrant reversal."[5]

Further, in this case, the trial court specifically sent out with the jury a written copy of its entire jury instructions, which included the originally intended statement on "flight" in relation to "mere presence," as agreed upon during the charge conference. Moreover, the

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Jackson v. State*, 239 Ga. App. 77, 81 (519 SE2d 746) (1999); *Cummings v. State*, 227 Ga. App. 564, 566 (489 SE2d 370) (1997); *Wakily v. State*, 225 Ga. App. 56, 57 (1) (483 SE2d 313) (1997); *Okongwu v. State*, 220 Ga. App. 59, 60-61 (467 SE2d 368) (1996).

[5] (Citation and punctuation omitted.) *Turner v. State*, 241 Ga. App. 431, 437 (6) (b) (526 SE2d 95) (1999).

trial court established on the record that the jury, in fact, reviewed the written instructions and found them "helpful." Under such circumstances, the jury had before it a correct version of the instruction about which Jackson complains, and any confusion engendered by the trial court's slip of the tongue during the oral charge is rendered harmless.[6]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 8, 2000.

*Benjamin Gratz, Jr.,* for appellant.
*C. Paul Bowden, District Attorney, Kevin E. Hutto, Assistant District Attorney,* for appellee.

---

[6] See generally *Anderson v. State,* 262 Ga. 26, 27 (3) (413 SE2d 732) (1992); *Patterson v. State,* 264 Ga. 593 (449 SE2d 97) (1994).