**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

August 6, 2014

# In the Court of Appeals of Georgia

A14A0908. HOPKINS v. THE STATE.

ELLINGTON, Presiding Judge.

A Dawson County jury found Skylar Hopkins guilty beyond a reasonable doubt of five counts of obtaining a controlled substance by fraud, OCGA § 16-13-43 (a) (3). Following the denial of his motion for a new trial, Hopkins appeals, contending that the only evidence that he had the requisite criminal intent is the uncorroborated testimony of his alleged accomplice and, therefore, that the evidence is insufficient to sustain his convictions. In addition, he contends that the alleged offenses comprised a single act of fraud and, therefore, that the five counts merged. For the reasons explained below, we affirm his convictions, vacate the judgment, and remand for resentencing.

1. Hopkins contends that the testimony of his alleged accomplice that he knowingly participated in her scheme to fraudulently obtain prescription medications was not corroborated by any other evidence and, therefore, that the evidence is insufficient to sustain his convictions.

> On appeal from a criminal conviction, the appellate court
>
> view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

OCGA § 24-14-8 (2013) (formerly OCGA § 24-4-8)[1] provides that

---

[1] We note that Hopkins' trial took place in April 2013, after the effective date of Georgia's new Evidence Code, which applies to any motion, hearing or trial commenced on or after January 1, 2013. Ga. L. 2011, p. 99, §§ 2, 101. "[T]he provisions of former OCGA § 24-4-8 were carried forward into the new Evidence Code and now can be found at OCGA § 24-14-8." *McKibbins v. State*, 293 Ga. 843, 847, n. 9 (750 SE2d 314) (2013).

[t]he testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness[.]

The corroboration required by this Code section,

must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. The corroborating evidence may be circumstantial. The sufficiency of corroborating evidence should be peculiarly a matter for the [finder of fact] to determine.

(Footnote omitted.) *Jackson v. State*, 246 Ga. App. 731 (1) (541 SE2d 701) (2000). See also *Martinez v. State*, 303 Ga. App. 71, 74 (1) (692 SE2d 737) (2010) (Slight circumstances may be sufficient to support an inference of collusion between family members); *Palmer v. State*, 243 Ga. App. 656, 657 (1) (533 SE2d 802) (2000) (Criminal intent may be inferred by the jury "upon consideration of the words,

3

conduct, demeanor, motive and all other circumstances connected with the act for which the accused is being prosecuted.") (footnote omitted).

Construed in favor of the verdict, the record shows that the jury received the following evidence. In 2011, Hopkins' long-time girlfriend and the mother of his children, Cindy Morgado, began working for a doctor as a medical assistant. Part of her duties included calling in prescriptions to pharmacies at the doctor's direction. In November 2011, after several weeks of working there, Morgado called in prescriptions for several medications to a pharmacy in Dawson County for herself and for Hopkins. Neither Hopkins nor Morgado was a patient of Morgado's employer, and the doctor did not write or authorize these prescriptions for them. In addition, Morgado did not have authority to call in prescriptions on her own initiative. When Morgado called in the prescriptions, she used her middle name, Michelle, when identifying herself as her employer's assistant, to avoid attracting attention to the fact that she was calling in prescriptions for herself.

On November 28, 2011, Morgado called in prescriptions for herself, each with two refills, for the controlled substances Lortab (40 pills), Ambien (30 pills), and

4

Xanax (60 pills) ;[2] she also called in a prescription for Lortab (40 pills) for Hopkins. At Morgado's request, Hopkins went to the pharmacy and picked up those prescriptions. On December 8, Morgado ordered a refill for her Lortab prescription, and Hopkins picked it up.

On December 12, Morgado again called in a prescription for one of the medications. The pharmacy called the doctor's office to verify the prescription and learned that it was not authorized. When Morgado and Hopkins went together to the pharmacy's drive through window to pick up the medication, the pharmacy technician asked Morgado to come into the store. Morgado panicked and told Hopkins to just drive away, and he did so even though the technician still had Morgado's identification.

At trial, Morgado testified that, before she began working for the doctor, she and Hopkins had both been prescribed painkillers and other medications and that, by November 2011, they needed more than their treating physicians were willing to authorize. Morgado testified that she and Hopkins together decided to obtain the

---

[2] In addition, she called in prescriptions for herself for Cipro and Phenergan , but the evidence showed that these are not controlled substances, and the trial court entered a directed verdict of acquittal on the corresponding charges.

5

controlled substances by having her call in prescriptions that were not authorized by her employer.

The relevant counts of the indictment are as follows: Count 1, the Lortab dispensed for Morgado on November 28, 2011; Count 2, the Lortab dispensed for Hopkins on that date; Count 3, the Ambien dispensed for Morgado on that date; Count 5, the Xanax dispensed for Morgado on that date; and Count 8, the Lortab dispensed for Morgado on December 8.

Under OCGA § 16-13-43 (a) (3), "[i]t is unlawful for any person . . . [t]o acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, subterfuge, or theft[.]" In this case, only a single witness – Hopkins' alleged accomplice, Morgado – testified that Hopkins possessed the requisite criminal intent to obtain possession of the controlled substances by fraud and deception. We conclude, however, that the State presented evidence of corroborating circumstances that prove Hopkins' intent, specifically, that, on November 28, 2011, Hopkins went to the pharmacy to pick up, in addition to medications dispensed for Morgado, Lortab that was clearly labeled as having been dispensed for him, purportedly on the authority of a doctor who had never provided care for him. Further, on December 12, Hopkins fled from the pharmacy when the

6

technician did not release Morgado's identification or the medication they were trying to pick up. Because there was evidence from a source other than Hopkins' accomplice that he knew that he was picking up prescription medications for which she had submitted fraudulent orders, a rational trier of fact could find Hopkins guilty beyond a reasonable doubt of committing the offenses as alleged in the indictment. *Sosebee v. State*, 282 Ga. App. 905, 906 (1) (640 SE2d 379) (2006). See also *Callaway v. State*, 247 Ga. App. 310, 318-319 (4) (542 SE2d 596) (2000) (The testimony of the defendant chiropractor's accomplice regarding the defendant's participation in an insurance fraud scheme was corroborated by his falsification of medical bills and his attempt to have another accomplice sign a bill falsely showing extra office visits.); *Hannah v. State*, 129 Ga. App. 794, 795 (201 SE2d 339) (1973) (A defendant's flight may be circumstantial evidence of his guilty knowledge.); *Prather v. State*, 116 Ga. App. 696 (1) (158 SE2d 291) (1967) (accord).

2. Hopkins contends that the offenses charged in the five counts all involved just a single act of fraud, that is, Morgado's November 28, 2011 telephone call to the pharmacy posing as someone with authority, that the offenses therefore merged, and that the trial court erred in imposing a separate sentence as to each count.

OCGA § 16-1-7 prohibits multiple convictions if "[o]ne crime is included in the other." "Under the express terms of that statute, however, the rule prohibiting more than one conviction if one crime is included in the other does not apply unless the same conduct of the accused establishes the commission of multiple crimes." (Citation and punctuation omitted.) *Ledford v. State*, 289 Ga. 70, 71 (1) (709 SE2d 239) (2011).

> If the same conduct established the commission of both offenses, it is generally necessary to take the next step in the analysis by applying the "required evidence" test . . . for determining when one offense is included in another: [a] single act may constitute an offense which violates more than one statute, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

(Citations and punctuation omitted.) Id. at 72 (1).[3] Whether two offenses are merged for sentencing is a question of law to which we apply a "plain legal error" standard of review. *Culbreath v. State*, _ Ga. App. _ (Case No. A14A0349, decided July 10, 2014).

---

[3] See also *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006).

8

As noted in Division 1, supra, OCGA § 16-13-43 (a) (3) makes it unlawful "for any person . . . [t]o acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, subterfuge, or theft[.]" The evidence showed that, on November 28, 2011, Hopkins acquired possession of three different controlled substances: Lortab (some dispensed for Morgado and some for himself), Ambien, and Xanax and that, on December 8, 2011, he again acquired possession of Lortab.

(a) *Different controlled substances.* Although Morgado's conduct in fraudulently representing to the pharmacist that she had a doctor's authority to call in the prescriptions occurred in a single telephone call on November 28, we conclude that Hopkins' conduct of acquiring possession of the several different controlled substances was not the same conduct for the purpose of deciding whether the offenses merged. That is, acquiring possession of Lortab is not the same conduct as acquiring possession of Ambien, and neither are the same as acquiring possession of Xanax. See *Ahmad v. State*, 312 Ga. App. 703, 708-709 (3) (719 SE2d 563) (2011) (Offenses of violating OCGA § 16-13-31 (e) by trafficking in methamphetamine, a Schedule II drug under OCGA § 16-13-26, and violating OCGA § 16-13-31.1 (a) by trafficking in 3, 4 methylenedioxymethamphetamine, a/k/a MDMA or Ecstasy, a Schedule I drug

9

under OCGA § 16-13-25, did not merge, even though the drugs were mixed together and the trafficking crimes were accomplished by the same conduct of the defendant. "Each crime required proof of a fact which the other did not, as there was no evidence that chemical compounds or elements were shared between the drugs.") (footnote omitted). Accordingly, Count 3 (Ambien) did not merge with Counts 1, 2, or 8 (Lortab) or with Count 5 (Xanax). Likewise, Count 5 (Xanax) did not merge with Counts 1, 2, or 8 (Lortab) or with Count 3 (Ambien).

(b) *Same controlled substance, different dates and acts of acquisition.* Although Morgado's conduct in fraudulently representing to the pharmacist that she had a doctor's authority to call in the prescriptions for Lortab occurred in a single telephone call on November 28, we conclude that Hopkins' conduct of acquiring possession of Lortab by going to the pharmacy to pick up the prescriptions on that date and on a separate occasion ten days later was not the same conduct for the purpose of deciding whether the offenses merged. Accordingly, Count 8 (Lortab acquired on December 8) did not merge with Counts 1 or 2 (Lortab acquired on November 28). See *Robertson v. State*, 306 Ga. App. 721, 725-726 (4) (703 SE2d 343) (2010) (Where the defendant sold a quantity of cocaine to a confidential informant, while retaining possession of another discrete portion of cocaine as he

10

drove away from the location of the sale, the offenses of selling one portion of cocaine and possessing the other portion of cocaine did not merge.); *Kinchen v. State*, 265 Ga. App. 474, 475 (594 SE2d 686) (2004) (Where the defendant took several pounds of marijuana from a larger quantity he had in his home and drove to another county, where he attempted to sell it to an undercover officer, the offense of possessing the marijuana that he tried to sell did not merge with the offense of possessing the separate quantity of marijuana that was seized from his home; the defendant "engaged in two separate courses of conduct at different times and locations with distinct quantities of contraband, even though he may have at some earlier time possessed all the marijuana in his home."); *Stancil v. State*, 155 Ga. App. 731 (2) (272 SE2d 511) (1980) (Where the defendant sold an obscene magazine to the same buyer on the same date at two different times and at two different locations, the offenses did not merge.).

(c) *Same controlled substance, same date and act of acquisition, different putative patients.* Finally, although the prescriptions for Lortab that Hopkins picked up on November 28 were purportedly for two different patients, we conclude that Hopkins' single act of going to the pharmacy to pick up Lortab on that date was the same conduct for the purpose of deciding whether the offenses merged. Accordingly,

11

Counts 1 and 2 merged, and the trial court erred in imposing separate sentences as to those counts. Cf. *Robertson v. State*, 306 Ga. App. at 725-726 (4); *Kinchen v. State*, 265 Ga. App. at 475; *Morgan v. State*, 220 Ga. App. 198, 199-200 (469 SE2d 340) (1996). Accordingly, the judgment as entered must be vacated and the case remanded for resentencing.

*Convictions affirmed, judgment vacated, and case remanded for resentencing. Phipps, C. J., concurs. McMillian, J., concurs in judgment only in Division 2 (c).*